DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT HEARING OFFICE


IN THE MATTER OF A███████ S█████

HEARING DATE: APRIL 20, 2006


TRANSCRIBED BY
LEGAL PERSONNEL, INC.  (301) 277-5711

APPEARANCES

HEARING OFFICER:                                COLES RUFF

ATTORNEY ADVISOR FOR
     DISTRICT OF COLUMBIA
     PUBLIC SCHOOLS

ATTORNEY FOR PARENT                             DOUGLAS TYRKA

FRIENDSHIP EDISON PUBLIC CHARTER SCHOOL    PAUL DALTON

School Psychologist                             SHARON PINER

1          HEARING OFFICER:  Good afternoon. This is the matter

2    of A███████ S█████, who was born on May 31, 1997.  This

3    confidential Administrative Hearing concerns the special

4    education services being provided to A███████ by the District of

5    Columbia Public Schools. Today's date is Thursday, 20, 2006.  It

6    is about 3 p.m.  This Hearing is authorized by Public Law 108-

7    446, the Individuals With Disabilities Education Improvement Act

8    of 2004 and Title V of the District of Columbia Municipal

9    Regulations.  Hey. Why do I note a surprise in your face.

10        MS. WILSON: I am surprised. I was coming here to tell you

11   that Mrs. Butler Truesdale is dismissing our witnesses and that

12   I will be over as soon as she officially dismisses us.

13        HEARING OFFICER: All right. I'll tell you what we're doing.

14   We're going through the preliminaries. These gentlemen have said

15   depending on what they can stipulate, you may not be a necessary

16   party.  Did I state that correctly?

17        MR. DALTON: Yes sir.

18        HEARING OFFICER: So, you want to go back over there and

19   come back?

20        HEARING OFFICER: Sure.

21        MS. WILSON: So I can tell them.

22        HEARING OFFICER: If we have to have them, then we'll wait.

23        MS. WILSON: I most certainly will wait.

1      HEARING OFFICER: All right.  Ah - now.  This Hearing is

2  authorized by Public Law 108-446, the Individuals With

3  Disabilities Education Improvement Act of 2004 and Title V of

4  the District of Columbia Municipal Regulations. This Hearing is

5  conducted under the auspices of the District of Columbia

6  Schools, hereinafter referred to as DCPS. We are in Hearing Room

7  Number 1. This Hearing is being recorded and either party may

8  request a copy of the recording or transcript by making a

9  written request from both or either through the Student Hearing

10  Office, DCPS. My name is Herbert St. Clair.  I am the Hearing

11  Officer. I'm going to ask counsel to identify themselves and

12  their respective parties. Let's begin with petitioner.

13      MR. TYRKA: Douglas Tyrka representing the parents.

14      MR. DALTON: Paul Dalton representing Friendship Edison

15  Public Charter Schools.

16      HEARING OFFICER: Now, I have a disclosure from the parent.

17  That's Ms. Nina Suggs, dated March 10th and I have a disclosure

18  from - what is that Friendship Edison Public Charter School

19  dated April 13th, 2006. I'm going to place this into the

20  disclosure unless I hear objections.

21      MR. TYRKA: Objection.

22      HEARING OFFICER: Mr. Tyrka, why are we here? The

23  preliminary matter?

4

1      MR. TYRKA: Yeah.

2      MR. DALTON: I just think if we get a couple of stipulations

3  out of the way --.

4      HEARING OFFICER: Okay.

5      MR. DALTON: We should be able to move this very far along.

6  What - what we have a preliminary motion to dismiss.

7      HEARING OFFICER: Is that the one that should be dated April

8  13th 2005?

9      MR. DALTON: Correct.

10     HEARING OFFICER: It's supposed to be 6th right?

11     MR. DALTON: Yeah.  And in the first paragraph we make a

12  couple of factual statements that I would like to stipulated to

13  the record by parent's counsel if in fact they are true.  The

14  facts that we allege are that Edison was a not a party to either

15  the - get my dates here - the April 19th Hearing or the June 23rd

16  Hearing.  Is that correct or incorrect counsel?

17     MR. TYRKA: That is correct.

18     HEARING OFFICER: Wait a minute.  All right.  Two additions.

19  Okay.  Now I don't have either of those, right?

20     MR. DALTON: I don't think so, cause I don't have them,

21  because we weren't a party.

22     HEARING OFFICER: Do you have them Mr. Tyrka?

23     MR. TYRKA: I have them, they are not in these disclosures,

1   but --.

2       HEARING OFFICER: Okay.  Do you accept that, they were not

3   parties?

4       MR. TYRKA: Yes.

5       HEARING OFFICER: Okay.

6       MR. DALTON: Now.

7       MR. TYRKA: Party to the Hearing obviously.

8       HEARING OFFICER:  Yeah, correct.  To the Hearings of April

9   19th and June 23rd, 2005?

10      MR. TYRKA:  Well the Hearings that were older than those

11  HOD's.

12      HEARING OFFICER:  I thought that's what I identified, go

13  ahead.

14      MR. DALTON:  Okay, so basically, inasmuch as that's been

15  stipulated, we stipulate to our argument and request a directive

16  finding in our favor.

17      HEARING OFFICER:  Okay, well let me just--. Okay, all right

18  fine. And the - I have the January 7th--.

19      MR. TYRKA:  HOD correct.

20      HEARING OFFICER:  January 7th HOD, where a meeting was

21  ordered, says Edison shall provide the student compensatory

22  education for the missed speech language services from September

23  2003 to February 2004 for the additional specialized instruction

1    that the student should have received from January 4th through

2    June – January 2004 through June 2004 when the student should

3    have been a full time special education placement and for the

4    counseling services he did not receive in September 2003.  All

5    right, now within 60 calendar days of the issuance of this HOD,

6    DCPS shall convene and Edison shall participate in an MDT to

7    form the duration – to determine the form of duration of the

8    compensatory education for the student, to provide and develop a

9    compensatory education plan – blah…blah…blah… Now that did not

10   take place?

11       MR. TYRKA:  Well before we get into the merits, I

12   understood Friendship to beginning a – or to be representing its

13   motion to dismiss. I also have a preliminary motion – the motion

14   of default on the basis of Friendship's failure to serve a

15   response and failure to schedule a resolution meeting.

16       HEARING OFFICER:  To the – to the—January 25th complaint.

17       MR. TYRKA:  So I think obviously the Hearing Officer can

18   determine which of the preliminary motion you want to address

19   first, but I would ask that you address those before getting to

20   the merits.

21       HEARING OFFICER:  First, I think I should address the

22   failure to conduct – convene a resolution session. Was the

23   resolution session reconvened?

7

1      MR. DALTON:  We requested that we be invited twice, they

2   didn't invite us.

3      HEARING OFFICER:  Oh, no what I mean you mean to the MDT

4   meeting?

5      MR. DALTON:  Oh you mean for this Hearing, the resolution -

6      HEARING OFFICER:  Yeah.

7      MR. DALTON:  A resolution meeting is not required when our

8   answer is a motion to dismiss. There is nothing to resolve here.

9   This issue is the same issue that was presented in two prior

10   Hearings of which we are not a party.  They don't get three

11   chances at the apple, they don't even get one. They had a right

12   to bring an action and they did so on April 19th.  We had to be a

13   party to that.  They lost the right at the end of that Hearing

14   they made decision to (inaudible).  Then they compounded the

15   lost of the right by having another Hearing on June 23rd. And we

16   certainly are not going to have a 3rd Hearing is the position or

17   our client.

18      MR. TYRKA:  I'm not sure what the legal basis for that

19   position could be.

20      HEARING OFFICER:  Wait. Wait. Wait. Everybody is going to

21   get a chance to finish all of their arguments. First, let me

22   just think about this resolution session, okay.  The complaint

23   was filed serving you? Did Friendship Edison get a copy of the

1  January 25th complaint?

2      MR. DALTON:  No. Because we weren't a party.

3      HEARING OFFICER:  Wait a minute. The January 25th complaint

4  right here.

5      MR. DALTON:  Well the one for today?

6      HEARING OFFICER:  Yes.

7      MR. DALTON:  Yes.

8      HEARING OFFICER:  Well you got a copy of that complaint.

9      MR. DALTON:  I think your client is here.

10     MR. TYRKA: Okay.

11     HEARING OFFICER:  And now your--.

12     MR. DALTON:  I did not receive a complaint, okay for the

13  previous two Hearings.

14     HEARING OFFICER:  I understand that.  I want to know about

15  the January 25th complaint. Did you get a copy of that complaint?

16     MR. DALTON:  HmmmHmmm.

17     HEARING OFFICER:  What did you do in response to that --.

18     MR. DALTON:  Filed this motion to dismiss.

19     HEARING OFFICER:  And that was dated --.

20     MR. DALTON:  Well its dated the 13th and I think it was

21  filed - oh ----, let me see.  I guess it was filed the same day.

22     HEARING OFFICER:  All right. Well let me ask you this.

23  What is the difference of this complaint not being filed within

1   the 15 days that the resolution session in mandated?

2     MR. DALTON:  Because this - you don't have jurisdiction. If

3   you don't have jurisdiction, none of the other things apply.

4   This is a jurisdictional issue. And you do not have

5   jurisdiction.  That's why we don't have to go to the

6   resolutions.  Only if this Hearing Officer has jurisdiction do

7   those elements come into place. And they do not because of res

8   judicata and collateral estoppel.

9     MR. TYRKA:  Just so it's not forgotten, the Hearing Officer

10   is aware that our motion for default is based also on

11   Friendship's failure to serve a response as required by the

12   IDEA.  I know the Hearing Officer is reading Friendship's motion

13   --.

14     HEARING OFFICER:  Yeah. Yeah.

15     MR. DALTON:  That is a response.

16     HEARING OFFICER:  Well well. All right.  Have we covered

17   that preliminary motion?

18     MR. TYRKA:  Well I'll give a little more on it.

19     HEARING OFFICER:  Yes do.

20     MR. TYRKA:  I'm aware of - I'm aware of that the Hearing

21   Officer has ruled on these motions in the past and granted them

22   to expand a bit.  I believe the Hearing Officer is aware of

23   Massey v. DCPS 400 F. Supp. 2d 66. In that case the District

1    Court addressed the failure of the LEA, in that case it was

2    DCPS.  Their failure to serve a proper response under 1415 and

3    their failure to convene a resolution meeting in a timely

4    fashion on those facts. And I might add in that case, DCPS had

5    in fact, filed a response.  It just did not meet the statutory

6    requirements.  In Massey the Court found that the failure by the

7    LEA to follow those procedures was so severe that it invalidated

8    the entire administrative process and permitted the plaintiff to

9    go forward in federal court immediately without exhausting her

10   remedies.  In this case, we have an even greater violation.

11   1415 requires a response be served, not only covering certain

12   factors in the case, none of which are covered by this motion to

13   dismiss, but also within a certain timeframe. And the timeframe

14   is 10 days after the filing of the complaint. The complaint was

15   filed on January 25th. This motion was filed on April 13th, which

16   is not only obviously barred outside the 10 day timeline, but it

17   also just within the five-day disclosure period.  I don't think

18   there is anything indicating that this was intended or should be

19   read to serve as a response in this case. If somehow it were

20   intended to be response, there is no question it does not meet

21   the requirement of 1415 and you know those requirements, I'm

22   sure the Hearing Officer is aware of them, but they are further

23   laid out in our motion for default which is parent's 15.

1      HEARING OFFICER: All right let me ask you this, Mr. Dalton.

2      MR. DALTON:  HmmmHmmm.

3      HEARING OFFICER:  I wish I had, will you provide me copies

4   of these HOD's just for my own information?  Now I'm to

5   understand that these basically were to force the Friendship

6   Edison to comply with the January -no?

7      MR. TYRKA:  No. They were against DCPS. The complaints were

8   filed solely against DCPS.  And that would be the only relief

9   sought was from DCPS.  I believe I inappropriately, as I recall

10  one of the HOD's also granted relief against Friendship Edison.

11  Because Friendship Edison was not a party, because we had not

12  claimed any relief against Friendship Edison, we never chose to

13  assert that HOD for obvious reasons.

14     HEARING OFFICER:  Well what about – when you filed this

15  April 19, 2005 complaint, did it refer to the paragraph 1 of the

16  Order in Mr. Cole's Order issued January 7th?

17     MR. TYRKA:  I actually don't recall I'm afraid.

18     HEARING OFFICER:  What about in 2005?  I mean June 23rd

19  2005? Excuse me.

20     MR. TYRKA:  Again, I'm sorry, I don't recall. As best as I

21  can recall, I can say this.  The – the HOD of January 7th

22  provided – put obligations on DCPS and Friendship Edison.

23     HEARING OFFICER:  Right.

1        MR. TYRKA:  They were separate obligations.

2        HEARING OFFICER:  Right.

3        MR. TYRKA:  We brought our claim.

4        HEARING OFFICER:  But one of them is subject to a condition

5    preceding, right?

6        MR. TYRKA:  Not necessarily.

7        HEARING OFFICER:  What does it say within – within 60 days,

8    DCPS shall convene. So if they convene it—Did DCPS convene the

9    meeting?

10       MR. TYRKA:  They convened it late?

11       HEARING OFFICER:  What does that mean?

12       MR. TYRKA:  July 21st.

13       HEARING OFFICER:  Did they invite Friendship Edison?

14       MR. TYRKA:  Yes. Well actually, let me check on what I just

15   said.  I want to make that these are the notes that I'm

16   thinking.

17       HEARING OFFICER:  Yes and give me the June 2005.

18       MR. TYRKA:  June 2005. Yes and Friendship attended.

19       HEARING OFFICER:  Friendship attended that meeting?

20       MR. TYRKA:  Correct.

21       HEARING OFFICER:  All right. Well--.

22       MR. TYRKA:  Counsel did.

23       HEARING OFFICER:  Okay.  Now I don't want to know if I am

13

1    getting into the merits in here, what I'm going to do is to have

2    a full record here. I'm - have you finished your presentation on

3    the motion for default on failure to convene a resolution

4    session?

5        MR. TYRKA:  I almost. I have made no presentation on

6    Friendship's motion.

7        HEARING OFFICER:  I understand. Now let me hear yours.

8        MR. DALTON:  Massey is completely off point.  It has no

9    bearing on this case at all. Here's why.  Massey first hearing -

10   first hearing.  Okay. You don't answer on the first hearing.

11   Yeah.  Massey was to correct a pervasive practice of DCPS not

12   answering any of their cases, okay. And they corrected it. They

13   do now file answers.  Okay.  Here, that wasn't the case.  At the

14   first hearing, we had a full Hearing.

15       HEARING OFFICER:  The first hearing is what?

16       MR. DALTON:  The January 7th.

17       HEARING OFFICER:  Okay.  Okay. You had a full hearing.

18       MR. DALTON:  There is case law out the kazoo and hearing

19   determinations out the kazoo here by every hearing officer I can

20   think of that if you do file on that second hearing, --.

21       HEARING OFFICER: If you do not file on the second hearing?

22       MR. DALTON:  A complaint about the first hearing not being

23   - a determination not being followed, you're done. You're done.

1    HEARING OFFICER:  So, are you suggesting that the April 19,

2    2005 complaint did not reference this --.

3    MR. DALTON:  We were not a party so we could not have

4    referenced that.

5    HEARING OFFICER:  Wait just a minute, just a minute.  DCPS

6    convened a meeting, this meeting that's ordered in Mr. Cole's

7    Order convened when--.

8    MR. DALTON:  After that.  After that.

9    HEARING OFFICER:  Convened when in 2005?

10    MR. TYRKA:  July 21st.

11    HEARING OFFICER:  Okay.

12    MR. DALTON:  It's after.

13    HEARING OFFICER:  What is after?

14    MR. DALTON:  The – the April 19th.

15    HEARING OFFICER:  is before the July meeting.

16    MR. DALTON:  Correct.

17    HEARING OFFICER:  So what I'm trying to get at is, when is

18    this – when is this – when I say this, I mean the January 7,

19    2005 HOD, when is that in violation.

20    MR. DALTON: 60 days after, before the April HOD.

21    HEARING OFFICER:  Okay, now.

22    MR. DALTON:  So you have a violation.

23    HEARING OFFICER:  I understand that.

1      MR. DALTON:  You file that --.

2      HEARING OFFICER:  Just a minute. Just a minute. The April

3  19, 2005 Hearing did not address this at all. You didn't raise

4  this at all. It was another issue, is that correct? You're going

5  to get those to me, is that correct?

6      MR. TYRKA:  Now I don't want to make representation about

7  that, but I will say is that we did not raise any claims against

8  Friendship Edison.

9      HEARING OFFICER:  No. No. No. Did you raise any claims on

10  this Order--?

11      MR. TYRKA:  Against DCPS?

12      HEARING OFFICER:  Yes, on this Order?

13      MR. TYRKA:  I can't say either way.

14      HEARING OFFICER:  All right. I want to see that because if

15  you referred to this Order, that's important.  If anything in

16  that April 19th 2005 Hearing Request mentions anything in this

17  Order,

18      MR. DALTON: --APRIL—

19      HEARING OFFICER:  Mr. I'm speaking sir.  I'll tell you

20  what.  That's a good point. You want to bring Ms.  – did you

21  sign in?

22      MS. WILSON:  No. And If I could just say, I was walking by

23  and just got out of that other – and I have not had a chance to

16

1  go upstairs and switch folders, I was just popping in to see

2  where you all were, based on the last –

3      HEARING OFFICER:  All right. This is where we were. Let me

4  see if I can count this.  Mr. Tyrka has a motion on his motion

5  to default in that Friendship Edison Public Charter School did

6  not convene a resolution session--.

7      MR. TYRKA:  And did not serve a response.

8      HEARING OFFICER:  And did not serve a response.  A response

9  to the complaint.  Mr. Dalton was taking the position that he

10  did respond, and that response is his April 13, 2006 motion to

11  dismiss, based on res judicata and collateral estoppel.  And I

12  was just about to hear his argument on that. He has so far said

13  that the April 19, 2005 and the June 23, 2005 that were against

14  DCPS – they stipulated that Friendship Edison Public Charter

15  School was not a party to either of the April 19th or June 23rd

16  complaints.  Now, I'd like that neither of those HOD's are in

17  the record.  Mr. Tyrka has agreed to provide me copies of them.

18  They are very important. In my thinking, at least a sit stands

19  now. And we are at the point where – we are at the point where

20  I'm trying to figure out where the January 7, 2005, which I do

21  have a copy of, appears in either – or is connected at all to

22  the April 19th or the June 23rd complaints. That's where we are.

23  Did I correctly state where we are?

1          MR. TYRKA:  That's my understanding where we are.

2          MR. DALTON:  Yep.

3          HEARING OFFICER:  You said HOD's the first time and

4    Complaints the second time, the June 23rd and April 19th, --.

5          MR. DALTON:  They're HOD's.

6          MS. WILSON: Okay. Okay.

7          HEARING OFFICER:  What we have here are 3 at least, 3

8    HOD's.  We have the January 17th or 7th?

9          MR. TYRKA:  7th.

10         MR. DALTON:  7th.

11         HEARING OFFICER:  7th HOD, which Mr. Tyrka - Mr. Dalton did

12   participate in and Friendship Edison was incorporated in that

13   Order - in the - in the fashion of a cocedent condition

14   preceding. In the April 23rd - I mean the April 19th and the June

15   23rd, 2005 HOD's, Mr. Tyrka can't remember whether or not he

16   referenced the January 17th HOD. That's important.  And the

17   meeting that was ordered in the January 17th meeting, the January

18   17th HOD, was late of course. I know you're not surprised at

19   that; your client being late, that took place in July.  So, we

20   at the point now, I'm at the point now where when did this

21   January 7 2005 HOD become in violation, fall into violation. How

22   long is that violation viable for the parent to sue on.  That's

23   where I am now.  Mr. Dalton, I'm listening.

1       MR. DALTON:  Well if you could go up to your files and if

2   you have a copy of the April 19th HOD, and the June 23rd HOD, if

3   you could make copies for counsel and the Hearing Officer, then

4   I think we could resolve this case very quickly because it's our

5   position that they do refer just as the complaint does today,

6   refer to that January 7th order HOD.  So you know, that would

7   clear it up.

8       MR. TYRKA:  To the Hearing Officer, I could have them faxed

9   in 5 minutes. I don't think we--.

10      HEARING OFFICER:  Let me just say this.  I'm going to think

11  over this. We'll declare a 10-minute break if you think you can

12  go up and get copies.

13      Ms. Wilson: I can't even speak as to whether or not I can

14  go up and get copies. The only think I need to know if I can go

15  up and get my filed.  As I said before, this current one, I

16  didn't even go upstairs after the other Hearing.  So.

17      HEARING OFFICER:  I'm going to declare a 10-minute recess.

18  Before I go on the record, yes Mr. Tyrka?

19      MR. TYRKA:  Should I have them faxed?

20      HEARING OFFICER:  Yes, but I want you to know right now,

21  I'm not going to make a rule from the chair on this. I'm not

22  going to do that.  I want to make sure that everyone has their

23  record.  And I want to make sure I've sorted this out in the

19

1   quiet of my little cubical. Brief recess.

2       HEARING OFFICER:  Okay, we're back on the record. The

3   Hearing Officer has copies of the two 2005 HOD's. You were

4   arguing Mr. --.

5       MR. DALTON:  I was arguing that this issue is res judicata.

6   And it is res judicata because the Hearing Determination for the

7   Hearings of April 19th, and June 23rd both revert back to the HOD

8   of January 7th and therefore we were under no obligation to file

9   a response under the new IDEA, okay. We were under an obligation

10  having now at the 3rd hearing the January 7th, to make a response,

11  okay. In other words, to answer the fact that it is res

12  judicata, it is collateral estoppel, but not to file a response

13  under IDEA 2004.  Okay, so I just want to make sure that when we

14  use the response, Mr. Tyrka is using it in the sense of the IDEA

15  2004.  I am using it in the sense of you cannot let something be

16  filed and not file something in response to it.  Otherwise, you

17  are going to have default.

18      HEARING OFFICER: You cannot file and what?

19      MR. DALTON:  You cannot ignore a pleading. If you do ignore

20  a pleading you ignore --.

21      HEARING OFFICER:  Now that I've read these complaints, --

22      MR. DALTON: But there are two grounds, the res judicata is

23  one ground.

1       HEARING OFFICER: That's goes to the cause of action.

2       MR. DALTON:  Right to jurisdiction.

3       HEARING OFFICER:  Right.

4       MR. DALTON:  And therefore if you do not have jurisdiction,

5    to hear, the case under IDEA.

6       HEARING OFFICER:  When you say jurisdiction, are you

7    referring to subject matter jurisdiction?

8       MR. DALTON:  Yes. Over IDEA, not over the fact of res

9    judicata or over the fact of collateral estoppel.

10      HEARING OFFICER:  Okay, all right.

11      MR. DALTON:  Now is the Overy sp? District of Columbia case

12   which is a 1993 case, it says that collateral estoppel for issue

13   preclusion --.

14      HEARING OFFICER:  What source the citation on it?

15      MR. DALTON:  It's in my—ah ---. It's in my --. It's right

16   there.  638 Atlantic 2nd, 669-703. It's the very last sentence.

17      HEARING OFFICER: Okay. Okay.

18      MR. DALTON:  Collateral Estoppel or issue preclusion is

19   appropriate when one identical issue was previously adjudicated,

20   the issue was actually litigated and a previous determination

21   was necessary. All of those issues are present. Because it goes

22   back exactly to the January 7th, HOD and therefore.

23      HEARING OFFICER:  Okay, let me ask you this.  When did the

1    cause of action under the January 7th, 2005 HOD mature against

2    Friendship Edison?

3        MR. DALTON: 60 days after the Hearing.

4        HEARING OFFICER:  So the order for DCPS to convene the

5    Hearing, isn't that a condition preceding.

6        MR. DALTON:  It's a condition collateral - I don't consider

7    it a condition preceding.

8        HEARING OFFICER:  Let's suppose, let's suppose Mr. Coles

9    had ordered either DCPS or Friendship Edison to convene the

10   meeting and to invite the other within 60 days.

11       MR. DALTON:  And let's say one party didn't do it.

12       HEARING OFFICER:  Okay, at that point, I would think a

13   cause of action would rise against both.

14       MR. DALTON:  As it does in this situation because of all

15   the rulings we've had in our jurisdiction based--.

16       HEARING OFFICER:  Let me ask you one thing.

17       MR. DALTON:  You have to raise all the issues.

18       HEARING OFFICER:  Well just let me say this.  Does as I

19   understand it, I want you to respond to this.  I understand the

20   cause of action arising against Friendship Edison.  Arising

21   after DCPS tries to schedule the meeting and invites Friendship

22   Edison to attend and they do not attend.

23       MR. DALTON:  Absent a filing a of an HOD, I agree.  But once

1   you filed that HOD, no I do not agree.

2       HEARING OFFICER:  So you're saying that - all right well

3   look. How is Friendship - Friendship Edison did attend the July

4   meeting that was convened.  Once DCPS convened a meeting and

5   invited Friendship Edison, you attended right?

6       MR. DALTON:  But there's the second part of the

7   clarification I want to make.

8       HEARING OFFICER:  Okay, all right.

9       MR. DALTON:  You need to seriously look at our exhibit

10  number 5, the MDT notes. And I would direct your attention to

11  the last page of those notes.

12      MS. WILSON: What date.

13      MR. DALTON:  It's just our exhibit 5. It's dated 7/21/05.

14      HEARING OFFICER:  Wait a minute. Wait a minute. The last

15  page.

16      MR. DALTON:  It might be before Number 6.  Yours should be

17  tabbed.  I can give you a tabbed version. It's right before all

18  the faxes. It's before that.

19      HEARING OFFICER:  Oh here's the - Mr. Dalton you did

20  disclose that you - of course it's up here, June 21st.

21      MR. DALTON:  Right. Okay. Here is the notes.  Okay and in

22  the notes, we specifically state that at the time of the

23  meeting, we had not received those HOD's and therefore we could

1   not participate in the meeting, because we didn't even know that

2   were ordered.

3       HEARING OFFICER:  That's correct.  That's correct. And

4   nobody is complaining about you not participating in those

5   meetings, but those meetings were never convened.

6       MR. DALTON:  Oh no no.  We couldn't participate in this

7   meeting.  The one on July we did not participate.  We had

8   counsel present only to preserve the record in our objection.

9   And that's why we took pains to make it very clear.

10      HEARING OFFICER:  Let me see if I understand what you're

11  saying.  You're saying that because you were not a party in the

12  April and June 2005 request for hearings, your obligations under

13  paragraph 1 of Mr. Coles' – under 2 of --.

14      MR. TYRKA:  Mr. Ruff.

15      HEARING OFFICER:  Under paragraph number

16      MR. TYRKA:  One.

17      MR. DALTON:  One something.

18      HEARING OFFICER:  Under number 2, under paragraph number 2

19  was it rescinded or lapsed, or what – what are you saying

20  happened?

21      MR. DALTON:  It became – it became unavailable to the

22  petitioner based --.

23      HEARING OFFICER:  I don't' think I've heard of unavailable.

24

1    I've heard of what --.

2        MR. DALTON:  Well I don't want to use your language because

3    there may be case law that says something different and I'm not

4    aware and I want to rely on the case law that I have.

5        HEARING OFFICER:  Okay. I think I see what I got to decide

6    here.  This boils down to two verbs.  Convene and participate.

7        MR. TYRKA:  I just note that I haven't --.

8        HEARING OFFICER:  I understand. I haven't forgotten you.

9        MR. TYRKA:  That's fine.

10       HEARING OFFICER:  No. I told you I'm not going to make the

11   decision.

12       MR. DALTON:  He's already said he's not going to make a

13   decision today.

14       HEARING OFFICER:  Do I understand your argument Mr. Dalton?

15       MR. DALTON:  Well I am very - I am very concerned the

16   Hearing Officer's emphasis on the language. I do not believe the

17   language of the Order is relevant at all. I believe that if you

18   do not present an issue, that was presented in the previous

19   Hearing, you are barred by res judicata period. It doesn't

20   matter what the language is, if there was issue and you did not

21   raise it and it was not raised because we were not made a party.

22       HEARING OFFICER:  The language of the order is not

23   important.

1       MR. DALTON:   That's correct. For the purposes of res

2   judicata that's correct.  Absolutely. Because otherwise there

3   would not be doctrine.  You could be free 20 years later to

4   bring up a suit against the party, and say you didn't comply

5   with this particular part of the order and therefore that action

6   survived. No.

7       HEARING OFFICER:   I have to read. Because I think there is

8   something about res judicata being between parties.   Yeah

9   collateral estoppel may not.

10      MR. DALTON:   Does not.

11      HEARING OFFICER:   Not necessarily between parties, but I

12  have to go back to my first year law schoolbook.

13      MR. DALTON:   But the failure to me this as a party is the

14  error.

15      HEARING OFFICER:   Well. Well. Wait a minute.

16      MR. DALTON: We were a party. We were a party.

17      HEARING OFFICER:   I understand that. But, so the question

18  is when did the cause of action arise against, its not.

19      MR. DALTON:   That's the whole problem, sir. That's the

20  whole problem I think you have the analysis.   The other thing I

21  want to point out is, there was this res judicata and parties.

22  That's an issue you weren't a party in the first place, not an

23  issue that the fact that you're not a party in the second place.

1  That's the whole reason for the doctrine.  That they didn't name

2  you the second time.  And therefore you're barred.

3      HEARING OFFICER:  You mean the cause of action is barred.

4      MR. DALTON:  Right.

5      HEARING OFFICER:  I think I understand it. Mr. Tyrka did

6  you have something to contribute on Mr. Dalton's motion.

7      MR. TYRKA:  Again, promptly the contribution, but I'll do

8  my best.  Well first I'd like to ask are we, are we talking

9  about Friendship's motion or are we talking about --.

10     HEARING OFFICER:  Friendship's motion.

11     MR. DALTON: You don't have a disclosure?

12     MS. WILSON: Another one.

13     MR. TYRKA:  Ms. Suggs' motion.

14     HEARING OFFICER:  No, I've taken Ms. Sugg's motion under

15  advisement.

16     MR. TYRKA:  Okay.

17     HEARING OFFICER:

18     MR. TYRKA:  That's goes to, I think we've discussed that.

19  You didn't have a chance to reply to Mr. Dalton's motion.

20  That's what we're --.

21     MR. TYRKA:  I do just want to say a couple of points

22  because, while counsel was discussing Friendship's motion, there

23  was some mention of the necessity of response or whether or not

1    that applied in this case.

2        HEARING OFFICER:  Yeah, but you covered - we both covered

3    that.

4        MR. TYRKA:  Okay.  Several points while counsel was walking

5    through his analysis.  There was the suggestion that the

6    entirety of the history of A▬▬, whether it being involving

7    DCPS or Friendship Edison can be taken and lumped together as

8    one case.  I think counsel may have suggestion or discussion as

9    whether or not a response was required and is also now also

10   discussing for purpose of Friendship's motion.  I don't think

11   there is anything in the law anywhere indicating that that is

12   the situation.  To the situation.  When there has been a

13   violation, or an alleged violation of the IDEA, a party may

14   request that due process complaint or request a hearing for that

15   violation.  The law is very clear in 1415 that a response is

16   required to every complaint so raised.  Now as it applies to

17   this issue, the question of res judicata and collateral

18   estoppel.  First off they are very different things.  Res

19   judicata, I guess we heard there were cases out the kazoo, but I

20   don't see them cited here.  Res judicata is when the entire case

21   has been decided before.  This case that we're talking about,

22   the complaint brought on January 25th, 2006 against Friendship

23   Edison is a claim for against a particular party for violation

28

1   for a violation of a particular HOD.

2       HEARING OFFICER:  That's the January 17th HOD.

3       MR. TYRKA:  The January 17th HOD.  That case has never been

4   decided.  That is it.  That is the beginning and the end.  The

5   case against Friendship Edison for violation of that HOD has

6   never been litigated, had never been decided. Now, had Ms. Suggs

7   brought an action against Friendship Edison, for some other

8   purpose and had it been a necessary element of that action to

9   bring in these same claims, then there could be a res judicata

10  argument.  But were not close to that. We have actions against a

11  different party and we have actions where this claim was not all

12  necessary and in fact, as the Hearing Officer presented, it was

13  deemed the claim against DCPS or very possibly necessarily

14  brought before any action against Friendship Edison.  If we were

15  to go back to the point at which these complaints were brought

16  against DCPS, and we were to imagine Ms. Suggs including

17  Friendship Edison in those complaints, well what would

18  Friendship Edison say?  Friendship Edison would arrive here.

19  They would say, Number 1, we cannot comply with this Order,

20  until DCPS does what it's supposed to do, and DCPS hasn't done

21  it. So you have no cause of action against us. Number 2 this if

22  frivolous and give us our attorney's fees.  I think it would be

23  frivolous. And there would be a lot of trouble. And I'm not –

1    and I take that kind of restriction seriously, even if it

2    doesn't involve paying attorneys.  So that's it for res

3    judicata, and the law is very clear.  I mean unfortunately res

4    judicata and in particular in some of these hearings, that

5    phrase gets thrown around pretty loosely.  Res judicata is a

6    very specific thing.  It is this res was adjudicated – this

7    particular dispute against this particular party and that did

8    not happen or anything close to it.

9         Now, moving on to the issue preclusion. The issue

10   preclusion does not necessarily have to involve the same two

11   parties. One of the parties have to be the same. In this case,

12   Ms. Suggs is the party who is the same.  The issue of preclusion

13   applies when an issue has been litigated in a prior proceeding

14   and a party wishes to enforce the finding on that issue against

15   the party who is party to the original proceeding. So you have

16   an action between A and B, a fact is determined and then you

17   have an action between A and C, and C wants these determinations

18   of the fact against A.  There is no fact here. I'm not sure what

19   it would be.  We have two HOD's in Ms. Suggs favor. Each of them

20   determines that DCPS violated the HOD and ordered DCPS to do

21   something – in fact I'm not sure it's determined an violation,

22   it just a settlement. But it orders DCPS to something. So, the

23   issue preclusion, I don't know what the issue is.  And I haven't

1  heard Friendship identify that issue. For those reasons, I don't
2  see anything here on res judicata.  I don't see anything here on
3  the issue of preclusion.  I haven't heard any reference to a
4  case that addresses the situation like this.  I heard broad
5  references to cases that are out there, but I haven't seen a
6  reference. And this a paper motion and there was time to make
7  that.  So I don't' think any of that applies. And accordingly, I
8  understand that we still haven't reached the merits and I'm not
9  arguing the merits.  Accordingly, I would move on to Ms. Suggs
10  motion and default be granted in the charge of Edison.

11      HEARING OFFICER:  All right let me just.  Just a minute.
12  Go ahead Ms. Wilson?

13      MS. WILSON: I just wanted to just also just say that while
14  we're doing all this stuff back and forth, that DCPS still does
15  have a position in terms of its need to be here. I don't know if
16  you guys addressed it already, while I was upstairs, but I just
17  wanted to remind the Hearing Officer before - we—DCPS does want
18  to state that.

19      HEARING OFFICER:  And that is that DCPS--.

20      MS. WILSON: Just based on the issues in complaint as
21  Friendship Edison that DCPS is not a party to this action. DCPS
22  and I think counsel for petitioner made reference to separate
23  claims against DCPS and Friendship Edison.  The separate claims

1    against DCPS have already been adjudicated. That was done last

2    month and DCPS is not a party to nor do they have any bearing on

3    whether or not Friendship Edison failed to comply with an HOD.

4        HEARING OFFICER:  Let me see if I understand what you're -

5    the compliant.  You're pointing out Mr. Tyrka at this meeting,

6    Friendship did not complete a discussion and determination of

7    compensatory education as Mr. Coles - Mr. Ruff ordered in his -

8    in his January 7th HOD.

9        MR. TYRKA:  You're asking me for the arguments on the

10   merits?

11       HEARING OFFICER:  No. Is that what you're saying?

12       MR. TYRKA:  In the complaint?

13       HEARING OFFICER:  Yes. That they --.

14       MR. TYRKA:  They did not; they neither developed a

15   compensatory education plan at that meeting or at anytime since.

16       HEARING OFFICER:  All right.  And you're saying that you

17   weren't obligated to do that Mr. Dalton because Mr. Tyrka waived

18   it by not including you as a party in the April and June --.

19       MR. DALTON:  No. No.  Not for the purposes of that meeting.

20   The purpose of that meeting we were not on notice that there

21   even was a January 7th HOD.

22       HEARING OFFICER:  Oh yes, but I do remember that you - in

23   one of his - somewhere you were going to decide whether or you

32

1    were going to – appeal that decision because you were not a

2    party to that right?

3        MR. DALTON:  No. The only – there was an allegation that

4    there was an obligation that we were ordered to provide

5    compensatory ed and that we were ordered to--.

6        HEARING OFFICER:  That's in this January 25th complaint.

7        MR. DALTON:  No, in the January 7th complaint.  In the

8    January 7th order, there was an – subsequent to the January 7th

9    HOD --.

10        HEARING OFFICER:   HmmmmHmmm.

11        MR. DALTON:  We were being told, "Hey guys you have to come

12    to this July meeting because you were ordered to do it back in

13    January." And we said, "No way because we never been served a

14    copy."

15        HEARING OFFICER:  Of What?

16        MR. DALTON:  Of the January 7th HOD.

17        HEARING OFFICER:  Didn't I read something in here where it

18    says, this is the July 29th letter over Ms. Doles signature. It

19    says we have had an opportunity to review the January 7th 2008

20    HOD with our client.  At this time we're prepared to go forward

21    with a compensatory education meeting at High Road.  Please

22    propose provincial dates and meetings and someone from our

23    office will be available to attend the meeting for A██████.

1    MR. DALTON: No one ever invited us. Even if you are going
2  to make the argument that this was in our office.

3    HEARING OFFICER: But somebody did show up at the meeting?
4    MR. DALTON: No, not then. The meeting had already taken
5  place. That's a July 26th letter from Ms. Duask sp?

6    HEARING OFFICER: The January 21st meeting --.

7    MR. DALTON: The July 21st IEP meeting had already taken
8  place.

9    HEARING OFFICER: When did the July meeting take place?
10    MR. DALTON: On the 21st.

11    HEARING OFFICER: Wait a minute. And this is where Laura
12  Duask sp? was at the meeting.

13    MR. DALTON: Yes! And that's why she writes in the notes,
14  hey we haven't gotten the HOD from 6 months ago.

15    HEARING OFFICER: And you're saying that you are now
16  willing to go to the meeting.

17    MR. DALTON: No, of course not!

18    HEARING OFFICER: Wait. Wait. Wait. When did you find out
19  about the July 21st meeting?

20    MR. DALTON: At some point prior to the meeting. Because
21  obviously we had to know about it in order to have someone
22  there. What you have to understand sir is that the July 22nd
23  letter written by Ms. Duask does not have any knowledge of ...

34

1    subsequent filings.  Because we didn't have those, because we

2    weren't made a party.

3        HEARING OFFICER:  Let me read Ms. Duask.  Let me see if I

4    understand this correctly.  You participated in the Hearing in

5    January that resulted in the January 7th 2005 HOD.

6        MR. DALTON:  Correct.

7        HEARING OFFICER:  But you just did not get Mr. Coles — Mr.

8    Ruff's decision.  But you did participate in the Hearing.

9        MR. DALTON:  HmmmmHmmm.

10        HEARING OFFICER: All right. I think I understand now.

11        MS. WILSON: I don't recall if the Hearing Officer commented

12    on DCPS request to be dismissed out of this case. There is

13    nothing in the complaint, no relief that DCPS could provide as

14    the allegations are against Friendship Edison and whether or not

15    they complied with an HOD.  And as I mentioned DCPS is already

16    adjudicated its particular - has already had litigation with

17    petitioner as to petitioner's specific issues against DCPS. And

18    there is no remedy that could be fashioned against DCPS for the

19    alleged failure of Friendship Edison to comply with the HOD.

20        MR. TYRKA:  We have no claim against DCPS in this.

21        HEARING OFFICER:  I'm wondering why I should keep DCPS --.

22        MR. DALTON:  (Laughter/Chuckle). I object under the most

23    strenuous circumstances. I have not seen that decision.  And you

1  prohibited me from seeing that decision.

2      HEARING OFFICER:  Wait. Wait. Wait.

3      MR. DALTON:  Now she is going to rely on that decision.

4      HEARING OFFICER:  Wait. Wait. Wait. What decision are you

5  talking about?

6      MR. DALTON:  You're talking about the March 6th, HOD.

7      MS. WILSON: No. I said that there was litigation. I've not

8  received an HOD. I said that there was litigation that took

9  place last month where petitioner --.

10     HEARING OFFICER:  No No. No.  We're talking about.

11     MS. WILSON: I never referenced an HOD.

12     HEARING OFFICER:  We're talking about the January 7th HOD.

13     MR. DALTON:  No, she's talking about March.

14     HEARING OFFICER:  No, but I'm talking – the – the

15  litigation here involves the January 7th.

16     MR. DALTON:  But it could only, the March 6th litigation did

17  it revert back to the January decision?

18     MS. WILSON: The March 6th – the basis of that was there is

19  January – no.  I mean I'd be happy to show you a copy of the

20  complaint. I don't see how – there is no.  It doesn't reference

21  the January --.

22     HEARING OFFICER:  It's different issues altogether.

23     MR. DALTON:  I have to see a copy of it because it.

1      HEARING OFFICER:  Just a minute now. That's confidential

2  document.  Yeah. I'm not going to order it.  You have your copy.

3      MS. WILSON: And also I think that you know, it's the

4  representation of, I mean counsel for petitioner has already

5  stated that there are no claims against DCPS in this particular

6  hearing. The complaint that is the basis of this particular

7  hearing is whether or not Friendship Edison violated a January

8  7, 05 HOD.  There is nothing in that that relates to DCPS.  DCPS

9  has already adjudicated its issues with the petitioner.

10     MR. DALTON: You can't do that separately.

11     HEARING OFFICER:  All right. Let me just.

12     MS. WILSON: But there is no claims against --.

13     HEARING OFFICER:  I tell you what. I'm going to take your

14  motion for dismissal under advisement. I want to make sure

15  whether or not I need to issue an interim order or I can issue a

16  final order. Now let's suppose that I rule, and the rule has

17  come out where I have to decide the merits on this.  As I

18  understand what you're asking for Mr. Tyrka in your January 25th.

19     MR. TYRKA:  We're asking for a meeting to --.

20     HEARING OFFICER:  You're asking me to order Friendship to

21  meet to fulfill its obligations under paragraph 2 of Mr. Ruff's

22  January 17th HOD.

23     MR. TYRKA: Correct. If the paragraph 2 part is right.

37

1  MR. DALTON:  How can we do that - when that order says that

2 DCPS --.

3  HEARING OFFICER:  That's correct.  But it seems - First of

4 all, I don't see - Just a minute.  I don't see why its necessary

5 for DCPS to convene a meeting. I don't' know why that was in the

6 order.  But DCPS did convene a meeting. Evidently your client

7 knew about that meeting because somebody showed up and then you

8 showed up and said, look we don't know what this about because

9 we never got a copy of the January 7th, 2005 HOD. But you

10 litigated, right?

11  MS.WILSON: HmmmmHmmm.

12  HEARING OFFICER:  I think I understand this. I don't see

13 any big issue as to the merits.  Is there a big issue a to the

14 merits.

15  MR. TYRKA:  I don't see a big issue.  I don't see any

16 reason to reach it.  I mean, I don't want to - I'll reiterate it

17 again.  This Hearing Officer has consistently held, but also

18 Massey, there was an argument that said,--

19  MR. DALTON: What.

20  MR. TYRKA:  I would like to continue with that but -

21  HEARING OFFICER:  Mr. Dalton, please restrain yourself,

22 your enthusiasm. Go ahead.

23  MR. TYRKA:  I'm not sure if --. But I've studied Massey at

1    great length and I've argued in a few different forums. The –

2    Massey by no means was Massey addressing a global issue on the

3    part of DCPS. It wasn't a class action. There weren't multiple

4    plaintiffs. There was one party.  There was one child involved.

5    It was an individual case against DCPS. DCPS failed to serve a

6    response containing all the necessary elements.  They served a

7    response. So it was not about DCPS general failure to serve

8    responses. They did serve a response. It did not meet the

9    requirements of the statute.  They failed to convene a

10   resolution meeting on the basis of those two things; the Court

11   held that the entire process was invalidated. And I think for

12   that reason, given that Friendship has passed by all those

13   opportunities to comply with procedure, that default should be

14   granted.

15       HEARING OFFICER:  Can I have one comment to the counsel.

16   I'm going to let this be the last word.  Do you think we're

17   going to try to get through this, okay go ahead.

18       MR. DALTON:  Counsel tries to suggest to this Hearing

19   Officer, who has practical knowledge that would completely

20   refute counsel's argument. That Massey was about case. But the

21   problem with that argument is, that in practice, yes DCPS did

22   file a response.  But the responses that they were filing were

23   not in conformed with IDEA 2004, and subsequent to their suit,

1  all of the sudden all of their responses were in conformity and

2  the Hearing Officer knows that because he's been a Hearing

3  Officer before Massey and after Massey.  So to suggest that the

4  Hearing Officer doesn't have the intelligence to know that

5  because this wasn't a class action suit, that DCPS did not

6  modify its behavior as a result of that decision is an insult to

7  both this counsel and the Hearing Officer in my opinion.

8      HEARING OFFICER:  That's going to be last the word. I want

9  to thank everyone for their patience. Ms. Suggs, I hope you find

10  this edifying.  No, I have your motion to be dismissed and I'm

11  going to rule on that.  No, and that's it. Thank you. The record

12  is closed. Give the Hearing Officer 10 days.