THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FRIENDSHIP EDISON PUBLIC CHARTER SCHOOL,**<br>　　　　　　　　　　**Plaintiff,**<br><br>v.<br><br>**NINA SUGGS, et al.**<br>　　　　　　　　　　**Defendants.** | )<br>)<br>)<br>)　Case No. 06-CV-1284<br>)　PLF<br>)　AK<br>)<br>)<br>) |

### DEFENDANT MS. SUGGS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I.   CLAIM PRECLUSION DID NOT BAR MS. SUGGS' CLAIMS**

Edison[1] argues that Ms. Suggs' claims were barred by claim preclusion based on prior decisions regarding the violations of hearing officers' determinations ("HODs") on the part of the District of Columbia Public Schools ("DCPS"). Edison provides only vague, incomplete, and ultimately meritless arguments regarding the presence of the elements of claim preclusion in the facts of this case.

In general, there are three elements to claim preclusion: 1) final judgment on the merits in a prior suit; 2) identity of parties in the two cases; 3) identity of claims in the two cases. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979). Where the parties to the action are not identical, claim preclusion may still apply, depending on the specific circumstances, where there is privity between parties in the two actions, or where the interests of a party to the second action were adequately represented by a different party to the first action. See Richards v. Jefferson County, 517 U.S. 793, 797-802 (1996).

There is no dispute that there exist two final judgments for Ms. Suggs against DCPS between January 7, 2005 and the filing of Ms. Suggs' due process complaint on

---

[1] Ms. Suggs is following the Plaintiff's convention of referring to itself as "Edison."

January 25, 2006 ("the 2005 HODs"). See Pl.'s Statement of Material Facts #11, #14; R. at 102-103, 105-108. There is no dispute that Edison was not a party to either underlying action. See id. #10, #13; Pl.'s Motion at 5. The only disputes regarding the claim preclusion elements regard the relationships between the respondents in the cases and the claims in the cases.

      **A.**      **There Was No Privity or Similar Relationship Between DCPS and Edison.**

Though Edison states in its Motion that "Edison was a **privy** to those cases," it offers no explanation for that statement. Motion at 5 (emphasis in original). There is no reason to believe that DCPS' and Edison's interests were so closely aligned. To the contrary, the January 7, 2005 HOD held each of DCPS and Edison liable for different harms, and placed different obligations on each of them.[2] See R. at 46-47.

By District law, a charter school like Edison has nothing resembling privity with DCPS. "A charter school... shall not be deemed, considered, or construed to be an entity of the District of Columbia government." D.C. Code § 38-1702.05(p). Charter schools have the capacity to sue and to be sued in their own names, they "exercise exclusive control over [their] expenditures," and they are "exempt from statutes, policies, rules, and regulations established...for public schools." D.C. Code § 38-1702.05(b)(8) & (e).

      **B.**      **The Due Process Complaint Against Edison Raised New Claims.**

Edison argues that the claims in the three actions are the same because the 2005 HODs against DCPS "arose from DCPS's failure to comply with and implement the

---

[2] Edison also claims that, though it was not a party to the action that resulted in the April 19, 2005 HOD, because it was "named" in that HOD, it was "bound" by it. Edison does not state what the HOD compelled it to do; the HOD does not in fact order Edison to do anything. See R. at 103. If the HOD had ordered relief against Edison, who was not a party to the action, the HOD would obviously have been unenforceable in that regard.

January 7, 2005 HOD and convene the MDT meeting," and the January 25, 2006 complaint against Edison "also alleged the same violation of failure to implement the January 7, 2005 HOD and convene the MDT meeting." Motion at 6. This contention is plainly false.

The two 2005 HODs against DCPS resolved due process complaints filed on March 9, 2005 and May 13, 2005. R. at 4, 102, 106; Exhibits 1, 2. The March 9, 2005 complaint identifies a violation of "[f]ailure to to comply with a January 7, 2005 HOD" and alleges that "DCPS did not comply with the HOD." Exhibit 1. The May 13, 2005 complaint identifies a violation of "[f]ailure to comply with an April 20, 2005 HOD" and alleges that "DCPS did not comply with the order." Exhibit 2.

The January 25, 2006 complaint against Edison does not, as Edison contends, "allege[] the same violation of failure to implement the January 7, 2005 HOD and convene a meeting." Motion at 6. The complaint does allege a "[f]ailure to comply with the terms and conditions of a January 7, 2005 HOD," but not the "same violation" of that HOD. The violation alleged in the January 25, 2006 complaint was Edison's failure to develop a compensatory education plan, not DCPS' failure to convene a meeting, as alleged in the prior complaints. The complaint leaves no question as to the new claim, as it alleges specific facts regarding Edison's actions since June 23, 2005, the date of the last HOD against DCPS:

> 5. At a MDT Meeting held on July 21, 2005, Friendship refused to discuss the provision of the outstanding compensatory education owed to Antoine under the terms and conditions of the January 7, 2005 HOD.
> 6. Friendship did not attend a subsequent MDT Meeting held on November 8, 2005.
> 7. Friendship has never determined the form, amount and duration of compensatory education owed to Antoine pursuant to the terms and conditions of the January 7, 2005 HOD.

R. at 81.

Contrary to Edison's contention, none of the three complaints contained identical claims as another. The first complaint alleged DCPS' failure to comply with the January 7, 2005 HOD. The second complaint alleged DCPS' failure to comply with the April 20, 2005 HOD. Those two claims were obviously very closely related, but the third complaint, rather than alleging DCPS' failure to convene a meeting, alleged Edison's failure to participate in a meeting and fulfill its obligations. The claim in the third complaint was against a different party, for different actions, which actions occurred after the filing of the two prior complaints.

As discussed at the hearing, at the time of the filing of the 2005 complaints against DCPS, it would have been impossible, or at least frivolous, for Ms. Suggs' to have brought the claim against Edison that she later asserted in her January 25, 2006 complaint. See Hr'g Tr. at 21-23, 26, 29-30. Because the January 7, 2005 HOD placed the burden of convening the meeting on DCPS, Edison obviously could not be faulted for failing to participate and accomplish the tasks appointed to it until DCPS convened the meeting. See R. at 46 ("DCPS shall convene, and Edison shall participate in, a MDT meeting...").

Therefore, when DCPS failed to convene the meeting, Ms. Suggs brought her complaints against DCPS to force them to convene the meeting; she did not bring a complaint against Edison for its failure to participate in a non-existent meeting. Later, once DCPS fulfilled its obligation to convene the meeting but Edison failed to develop a compensatory education plan, Ms. Suggs brought her complaint against Edison.

II.     **ISSUE PRECLUSION DID NOT BAR MS. SUGGS' CLAIMS**

Edison argues that Ms. Suggs' due process complaint was barred by issue preclusion. Edison falsely states that each element of issue preclusion is present in this case. At a more fundamental level, Edison makes no effort to explain how the prior determination of any issue would necessitate the dismissal of the Ms. Suggs' due process complaint against Edison.

### A.  The Elements of Issue Preclusion Are Not Present.

Regarding the elements of issue preclusion, though Edison accurately presents the law, it falsely states that the elements are met on the facts of this case. As the Parties appear to agree, the elements of issue preclusion are: 1) identity of issue in a prior case; 2) full litigation of the issue in the prior case; and 3) necessity of the resolution of the issue to the decision in the prior case. See United States v. Andrews, 479 F. 3d 894, 900 (D.C. Cir. 2007).[3] Though Edison has phrased its statement of the "issue" in an effort to establish identity of issues in the hearings, Edison's statement that the "issue" was fully litigated – and necessary to the decisions – is simply false.

As the hearing officers made perfectly clear, the 2005 HODs against DCPS were consent orders, or "settlements on the record." See R. at 137 ("The parties discussed the matter on the record and reached an agreement....[A] Hearing Determination is hereby issued incorporating the agreement as stated."); R. at 139-140 ("The parties did not enter any testimony in this matter as the parties settled this case on the record....[T]he terms shall be incorporated into an Order."). No issue was fully litigated at either hearing, and no finding was necessary to either decision.

---

[3] The application of issue preclusion must also not result in "unfairness" to the party precluded from litigating the issue. Because Edison has not indicated in what way the preclusion of the issue in question would affect this case, Ms. Suggs is incapable of arguing this point. See Argument II.B., infra. If Edison makes an argument regarding the impact of the proposed preclusion, Ms. Suggs may seek leave to file a surreply to address that argument.

Had there been litigation and specific determination in either 2005 hearing, there would still be no identity of issues with the issues in the April 20, 2006 hearing against Edison. Edison states the supposedly identical issue as "the convening [of] an MDT meeting," but the primary claim against Edison was not its failure to convene a meeting, but its failures to participate in one or otherwise to develop a compensatory education plan. See R. at 81 ("At a MDT Meeting held on July 21, 2005, [Edison] refused to discuss the provision of the outstanding compensatory education owed to Antoine... [Edison] did not attend a subsequent MDT meeting...[Edison] has never determined the form, amount and duration of compensatory education owed[.]").

Regardless, "the convening [of] an MDT meeting" is far too vague a statement of an issue. The issue in the hearings against DCPS was DCPS' failure to convene a meeting. DCPS' failure to convene a meeting was no longer an issue in the hearing against Edison, because DCPS had in fact convened the meetings.

Because no issue was fully litigated and necessarily determined in the 2005 hearings against DCPS, and because there was no identity of issues with those against Edison regardless, none of the elements of issue preclusion are present here.

> B. **Edison Has Not Indicated Why the Preclusion of Litigation Over Any Issue Would Have Necessitated the Dismissal of Ms. Suggs's Claims.**

Had Edison established the elements of issue preclusion at the administrative hearing, dismissal still would not have been warranted, because Edison never established why the determination of any fact in the prior hearings against DCPS would invalidate Ms. Suggs' claim against Edison.

6

At the administrative level, Edison never clearly defined the exact issue that it proposed be precluded from litigation. Now, in its Motion, it has identified the issue as "the convening of an MDT meeting." Motion at 8.

Were it the case that that issue – to the degree that Edison has defined it – had been resolved in the 2005 hearings against DCPS, one could only conclude that it was resolved in Ms. Suggs' favor, given that the HODs ordered relief for her. That is, if there was any factual determination regarding "the convening of an MDT meeting" at either of those hearings, the determination was: "The meeting has not been convened."

If that fact had been fully litigated and had been necessary to the 2005 decisions, as Edison argues, it would have added nothing to either party's case in the hearing against Edison.

      C.      **Issue Preclusion Could Not Apply, Because Ms. Suggs Did Not Have the Opportunity to Obtain Review of the 2005 HODs.**

"Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded [if] [t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action[.]" Restatement (Second) Judgments § 28; see Sornberger v. City of Knoxville, 434 F. 3d 1006, 1021 (7th Cir. 2006); Penda Corp. v. United States, 44 F.3d 967, 973 (Fed. Cir. 1994), cert. denied Cadillac Prods. v. TriEnda Corp. 514 U.S. 1110 (1995)("It is axiomatic that a judgment is without preclusive effect against a party which lacks a right to appeal that judgment.").

Because Ms. Suggs has never been aggrieved by any of the HODs, she has not been able to challenge any hearing officer finding on any issue. See 20 U.S.C. § 1415(i)

7

(2)(A)(right of "any party aggrieved" by administrative decision to bring civil action). Issue preclusion therefore cannot be applied.

### III. EDISON HAS MADE NO CASE FOR DCPS' RESPONSIBILITY, WHICH ARGUMENT EDISON HAS WAIVED REGARDLESS

In one paragraph, Edison argues that DCPS is responsible for "[a]ny consequences suffered by the parent in the failure to implement the three previous hearing officer's determination [sic]." Motion at 8-9. This argument is hopelessly vague, and unsupported by any reference to record or to any source of law. Ms. Suggs is unable to respond to it as presented. Regardless, though, Edison waived this argument when it failed to present it in a response to the due process complaint or at the hearing.[4] See 20 U.S.C. § 1415(c)(2)(B)(i)(I) (requirement of very detailed response to due process complaint); Fed. R. Civ. P. 8(c); Leonard v. McKenzie, 869 F.2d 1558, 1563 (D.C. Cir. 1989) (declining to consider issue not raised before hearing officer).

The argument is irrelevant regardless, because the Hearing Officer did not make any finding of harm "suffered by the parent in the failure to implement the three previous hearing officer's determination [sic]." Motion at 8-9; see R. at 1-6. The Hearing Officer found that Edison "remained fully liable for the compensatory education awarded to the student in Paragraph 1 of the Order in the January 7, 2005 HOD," not for any compensatory education resulting from a failure to implement that – or any other – HOD. R. at 6.

---

[4] Edison filed no response to the due process complaint. See Hr'g Tr. at 9. Edison claimed at hearing that its motion to dismiss "is a response," but then clarified that it was not "a response under IDEA 2004." Hr'g Tr. at 10, 20. Edison's motion was filed months after the IDEA's deadline for a response, and it plainly did not contain the information required in a response. See R. at 11-12; 20 U.S.C. § 1415(c)(2)(B)(i)(I). Regardless, Edison's motion to dismiss contained no mention of an argument that DCPS was responsible for Ms. Suggs' claims against Edison. See R. at 11-12.

8

IV. **THE HEARING OFFICER PROPERLY ORDERED A MEETING TO DETERMINE COMPENSATORY EDUCATION, AND EDISON'S ARGUMENT IS WAIVED AND MOOT REGARDLESS**

Edison argues that the Hearing Officer erred when he ordered a compensatory education meeting. Edison waived this argument when it declined to raise it in a response to the complaint or in a notice of insufficiency and at the hearing. Moreover, Edison's argument is now moot, as another Hearing Officer made a specific compensatory education award in a subsequent HOD. Regardless, the Hearing Officer acted with his authority when he ordered the compensatory education meeting.

    A. **Edison Waived Its Argument.**

As of the due process hearing, Edison had already waived any objection to an ordering requiring a meeting to determine compensatory education by failing to serve a response to the due process complaint, failing to file a notice of insufficiency regarding the due process complaint, and failing to convene a resolution session regarding the due process complaint. See footnote 5, supra; 20 U.S.C. § 1415(c)(2)(B)(i)(I); 20 U.S.C. § 1415(c)(2)(A); 20 U.S.C. § 1415(f)(1)(B); Fed. R. Civ. P. 8(c).

As of the filing of its Motion in this case, Edison has waived this argument again, by failing to make it at the hearing. See Leonard, 869 F.2d at 1563.

    B. **Edison's Opposition to a Compensatory Education Meeting is Now Moot.**

The doctrine of mootness precludes the federal courts from deciding cases in which prior to the decision something has occurred that makes it impossible for the court to grant Edison effectual relief. See Jones v. Montague, 194 U.S. 147, 151-152 (1904); Green v. District of Columbia, 2006 U.S. Dist. LEXIS 25288 *30-31 ("The only remaining 'relief' requested...is [the] application that the Court 'find that Hearing Officer

9

Banks erred as set forth above.'...This request...is emblematic of a classic request for an advisory opinion[.]").

Edison's criticism of the HOD clause ordering Edison to convene a meeting to determine compensatory education has become moot due to two superseding HODs issued since the April 28, 2006 HOD. Because those HODs together ordered a specific compensatory education award based on an evidentiary hearing, to be provided through independent providers of Ms. Suggs' choosing, there is no more call for a compensatory education meeting, so the Court cannot provide Edison with effectual relief.

The April 28, 2006 HOD against Edison, the HOD in question in this case, ordered Edison within 30 days to "convene an MDT meeting to discuss and determine the form, amount and delivery of compensatory education to the student." R. at 6. Edison failed to convene the meeting within 30 days, and Ms. Suggs consequently filed a new due process complaint against Edison on May 31, 2006. Exhibit 3. On August 8, 2006, a hearing officer[5] issued an interim HOD ordering a hearing to fully litigate the need for compensatory education, "in the best interest of the student in light of Reid." Exhibit 4 at 7; citing Reid ex rel. Reid v. District of Columbia, 401 F.3d 516 (D.C. Cir. 2005).

After multiple continuances, that hearing process was finally completed on March 9, 2007, after which the hearing officer issued a final HOD on April 12, 2007. Exhibit 5. The April 12, 2007 HOD reviewed all of the evidence presented regarding compensatory education and ordered Edison to provide A.S. 250 hours of tutoring in total and to

---

[5] Inexplicably, the hearing transcript filed in this case identifies the Hearing Officer in the April 20, 2006 hearing as Coles Ruff, when in fact it was Herbert St. Clair. The hearing officers for the January 7, 2005, April 20, 2005, June 23, 2005, April 28, 2006, April 12, 2007, and July 19, 2007 HODs were, respectively, Coles Ruff, Mr. Ruff, Charles Jones, Herbert St. Clair, Mr. Ruff, and Ramona Justice-Pegues. In the transcript filed in this case, the Hearing Officer (Mr. St. Clair) repeatedly mistakenly referred to Mr. Ruff as "Mr. Coles."

convene a meeting within ten school days "to determine the detail of when and how the tutoring will be provided." Id.

Edison failed to convene the meeting as ordered in the April 12, 2007 HOD, and Ms. Suggs filed another complaint against Edison. Exhibit 6. On July 19, 2007, a hearing officer issued an HOD ordering Edison to fund the tutoring from independent providers. Exhibit 7 at 8. The July 19, 2007 HOD does not order any further meetings involving Edison. See id.

The April 12, 2007 HOD determined the amount of compensatory education due to A.S. from Edison pursuant to the January 7, 2005 HOD. The July 19, 2007 HOD eliminated the need for any meeting whatsoever involving Edison, as it authorized Ms. Suggs' to obtain independent tutors at Edison's expense. Edison did not challenge either of those HODs, and the deadline for doing so has passed. Therefore, the Court cannot grant Edison any effectual relief by relieving it of the April 28, 2006 HOD's requirement that it convene a meeting.

Moreover, Edison's more specific argument regarding hearing officer error, that the Hearing Officer improperly ordered the meeting without taking evidence regarding the need for compensatory education, has similarly been rendered irrelevant by subsequent events. In the April 12, 2007 HOD, the hearing officer in that case weighed extensive documentary and testimonial evidence. See Exhibit 5.

Because the Court cannot grant Edison effectual relief from the April 28, 2006 order to convene a compensatory education meeting, Edison's argument on this point is moot.

    C.    **The Hearing Officer Properly Ordered a Compensatory Education Meeting.**

11

In its compensatory education argument, Edison conflates two distinct points when it states that "an award of compensatory education must be made on a case by case basis examining where the student should be," but uses that as a basis for its contention that a hearing officer may not order "a meeting to discuss compensatory education." Motion at 9. The first statement is undeniable in this circuit, but the second is unsupported by any authority.

In <u>Reid ex rel. Reid v. District of Columbia</u>, the Court of Appeals reviewed a District Court decision regarding an HOD in which a hearing officer had found a denial of FAPE, determined a compensatory education award for that denial based on the application of a formula to the amount of missed instruction and services, and empowered the child's IEP team to reduce or discontinue the compensatory education. <u>See</u> 401 F.3d 516, 520 (D.C. Cir. 2005). On appeal, the Court held that: 1) compensatory education awards cannot be determined by formula; and 2) a hearing officer (or judge) "cannot delegate authority to the IEP team to reduce or discontinue the prescribed compensatory instruction." <u>Id</u>. at 522-527.

There is no question, then, that as Edison states, "an award of compensatory education must be made on a case by case basis examining where the student should be," but that applies only to an award of compensatory education. Motion at 9. Nothing in <u>Reid</u> prohibits a hearing officer from ordering a meeting to determine compensatory education in the first instance; the Court in <u>Reid</u> addressed only "a straightforward question of law: may IDEA hearing officers authorize IEP teams to 'reduce or discontinue' compensatory education awards?" 401 F.3d at 526.

Cases interpreting Reid have empowered IEP teams to make initial compensatory education determinations. Most notably, the Consent Decree in the Blackman-Jones class action empowers IEP teams to make compensatory education determinations on a broad scale:

> Class members may obtain compensatory education under either of the following procedures. (a) Electing available products and/or services from the Blackman/Jones Compensatory Education Catalog…or (b) Addressing compensatory education at an IEP meeting…If the class member chooses to pursue compensatory education through the process in paragraph 76(b) above, the class member may request a due process hearing if dissatisfied with the resolution of his/her request for compensatory education at the IEP meeting or by the Central Administration personnel.

Blackman v. Dist. of Columbia, 2006 WL 2456413 *21 (D.D.C.).

It is worth remembering that the mediator of the Consent Decree, Judge Tatel, was also the author of Reid. See Reid, 401 F.3d 516; Blackman v. Dist. of Columbia, 454 F. Supp. 2d 1, 5 (D.D.C. 2006).

The Consent Decree is not the only case in which this court has ordered the IEP team to make the preliminary compensatory education determination. See Blackman v. Dist. of Columbia, 374 F. Supp. 2d 168, 172 (D.D.C. 2005) (ordering DCPS to "convene an MDT/IEP meeting to consider compensatory education and determine the form and amount of compensatory education to which [the plaintiff's child] is entitled[.]"); Flores v. District of Columbia, 05-CV-653 (RBW), Order of June 30, 2006 (ordering meeting "to assess whether and to what degree the child is in need of compensatory education," with specific reference to Reid).

## CONCLUSION

For the reasons presented herein and in Ms. Suggs' Motion for Summary Judgment, the Court should deny Edison's Motion.

        Respectfully submitted,
/s/_____
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264
tyrka@tyrkalaw.com