THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDSHIP EDISON PUBLIC CHARTER SCHOOL,<br>Plaintiff,<br><br>v.<br><br>NINA SUGGS, et al.<br>Defendants. | )<br>)<br>)<br>)<br>) Case No. 06-CV-1284<br>) PLF<br>) AK<br>)<br>)<br>) |

## DEFENDANT MS. SUGGS' MOTION FOR SUMMARY JUDGMENT

Defendant Nina Suggs hereby respectfully moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment. In support of her Motion, Ms. Suggs submits the attached Memorandum and states as follows:

1)   More recent administrative decisions, unchallenged by Edison,[1] have superseded the April 28, 2006 decision challenged by Edison, so this case is moot.

2)   Before ruling for Ms. Suggs on the merits, as he did, the Hearing Officer should have granted Ms. Suggs' administrative motion for default and ruled for her on that basis.

3)   Edison never attempted to make a case on the merits, and so failed to meet its burden of proof in the administrative hearing.

WHEREFORE, Ms. Suggs respectfully requests summary judgment on all claims.

Respectfully submitted,

/s/Douglas Tyrka
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

---

[1] In its Motion for Summary Judgment, the Plaintiff referred to itself as "Edison," and Ms. Suggs follows that convention.

tyrka@tyrkalaw.com

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRIENDSHIP EDISON PUBLIC CHARTER SCHOOL, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>NINA SUGGS, et al. )<br>Defendants. )<br>) | Case No. 06-CV-1284<br>PLF |

**DEFENDANT MS. SUGGS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**BACKGROUND**

Nina Suggs is the parent of A.S., a ten-year-old child who has been determined eligible

for specialized instruction and related services. R. at 63; Exhibit 2. Ms. Suggs and A.S. reside

together in the District of Columbia. R. at 1-6; Exhibit 2. A.S. attended Edison[2] in the past.

A January 7, 2005 Hearing Officer's Determination ("HOD") ordered Edison, inter alia,

to provide A.S. with compensatory education for specific deprivations in A.S.'s instruction and

services during the time he attended Edison. R. at 46. The HOD ordered Edison to participate in

a multidisciplinary team ("MDT") meeting convened by the District of Columbia Public Schools

("DCPS") to develop the compensatory education plan. Id. Edison has never developed the

compensatory education plan. R. at 1-148; Hr'g Tr. at 1-40.[3]

On January 25, 2006, Ms. Suggs filed an administrative "due process complaint" against

Edison alleging, inter alia, that Edison had failed to comply with the terms and conditions of the

_____

[2] Ms. Suggs is following the Plaintiff's convention of referring to itself as "Edison."
[3] At summary judgment, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

January 7, 2005 HOD. R. at 81-85. Edison never served a response to that complaint and never

convened a resolution meeting regarding the complaint.[4] R. at 1-148; Hr'g. Tr. at 7-9.

Ms. Suggs requested the entry of a default and a default judgment against Edison at the

administrative level, and the Hearing Officer denied that request. R. at 5; 116-125. After a

hearing, the January 25, 2006 complaint was resolved by an HOD of April 28, 2006, which

ordered Edison to convene a multidisciplinary team ("MDT") meeting within thirty days to

discuss and determine the form, amount, and delivery of compensatory education to A.S.. R. at 6.

Edison did not convene the ordered meeting within the required thirty days. Exhibit 2.

On May 31, 2006, Ms. Suggs filed a due process complaint against Edison alleging that

Edison had failed to comply with the April 28, 2006 HOD. Exhibit 1. On August 8, 2006, a

hearing officer issued an interim HOD ordering a hearing to fully litigate the need for

compensatory education. Exhibit 2.

On March 9, 2007, the full evidentiary hearing on compensatory education was held.

Exhibit 3. On April 12, 2007, a hearing officer issued an HOD resolving the May 31, 2006 due

process complaint, and ordering Edison to provide A.S. 250 hours of tutoring in total and to

convene a meeting within ten school days to "determine the detail of when and how the tutoring

will be provided." Id.

Edison did not convene the meeting ordered in the April 12, 2007 HOD within the time

period prescribed in that HOD. Exhibit 5 at 6.

On May 4, 2007, Ms. Suggs filed a due process complaint against Edison alleging that

Edison had failed to comply with the April 12, 2007 HOD. Exhibit 4. In a July 19, 2007 HOD, a

---

[4] Edison claimed at hearing that its motion to dismiss "is a response," but then clarified that it was not "a response under IDEA 2004." Hr'g Tr. at 10, 20. Edison's motion was filed months after the IDEA's deadline for a response, and it plainly did not contain the information required in a response. See R. at 11-12; 20 U.S.C. § 1415(c)(2)(B)(i)(I); see also Massey v. District of Columbia, 400 F. Supp. 2d 66, 71 (D.D.C. 2005)("DCPS may not determine the form of its response: the required content of the written response is precisely detailed in the IDEA.").

hearing officer ordered Edison to fund the provision of the tutoring ordered in the April 12, 2007

HOD from independent providers. Exhibit 5.

On July 20, 2006, Edison filed its Complaint in this case, challenging the April 28, 2006

HOD. Edison has never brought an action challenging either of the April 12, 2007 and July 19,

2007 HODs. Edison has never filed for a stay of either of those HODs.

Edison has never contended that it complied with the January 7, 2005 HOD. R. at 1-148;

Hr'g Tr. at 1-40; Pl.'s Motion Summ. J..

## STATUTORY FRAMEWORK

The IDEA, 20 U.S.C. § 1400, et seq., guarantees "that all children with disabilities have

available to them free appropriate public education that emphasizes special education and related

services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A); 34 C.F.R. § 300.300.

Congress has also afforded parents several procedural safeguards. See 20 U.S.C. § 1415.

Among them is the right to an administrative "due process hearing." Prior to a due process

hearing, after the filing of a due process complaint notice, the local educational agency must file

a response to the complaint and must convene a "resolution session," at which the parties discuss

possible resolution of the complaint. 20 U.S.C. § 1415(c)(2)(B); 20 U.S.C § 1415(f)(1)(B).

"Any party aggrieved by the findings and decision" at a due process hearing has the right

"to bring a civil action with respect to the complaint presented...in a district court of the United

States without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A).

## SUMMARY JUDGMENT STANDARD

In general, summary judgment is appropriate when the record as a whole shows that

"there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c).

When considering a motion for summary judgment, a trial court must draw all justifiable inferences in the non-moving party's favor, but the non-moving party may not rely on mere conclusory allegations, and "must present significant probative evidence tending to support" its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In a summary judgment motion, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In suits filed under the IDEA following an administrative hearing, the plaintiff must persuade the court that the hearing officer was wrong, and the court must explain its basis for ruling against the hearing officer. See Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988).

## ARGUMENT

### I.    THIS CASE IS MOOT

The doctrine of mootness precludes the federal courts from deciding cases in which prior to the decision something has occurred that makes it impossible for the court to grant the plaintiff effectual relief. See Jones v. Montague, 194 U.S. 147, 151-152 (1904); Green v. Dist. of Columbia, 2006 U.S. Dist. LEXIS 25288, *30-31 (rejecting IDEA plaintiff's requested relief of a finding of Hearing Officer error as "emblematic of a classic request for an advisory opinion").

In its Complaint, Edison requested as substantive relief that the April 28, 2006 HOD be "reversed" and the underlying due process complaint dismissed with prejudice. Compl. at 7. Because that HOD has been superseded by two later HODs, the "reversal" of that HOD and the dismissal of the due process complaint will not constitute effectual relief for Edison. Accordingly, this case is now moot.

The April 28, 2006 HOD against Edison, the HOD in question in this case, ordered Edison within 30 days to "convene an MDT meeting to discuss and determine the form, amount and delivery of compensatory education to the student." R. at 6. That is the only obligation from which Edison seeks relief.

HODs issued since April 28, 2006 have already relieved Edison of that burden. Following the April 28, 2006 HOD, Edison failed to convene the ordered meeting within 30 days, and Ms. Suggs consequently filed a new due process complaint against Edison on May 31, 2006. Exhibit 1. On August 8, 2006, a hearing officer[5] issued an interim HOD ordering a hearing to fully litigate the need for compensatory education, "in the best interest of the student in light of Reid." Exhibit 2 at 7; citing Reid ex rel. Reid v. District of Columbia, 401 F.3d 516 (D.C. Cir. 2005).

After multiple continuances, that hearing process was finally completed on March 9, 2007, after which the hearing officer issued a final HOD on April 12, 2007. Exhibit 3. The April 12, 2007 HOD reviewed all of the evidence presented regarding compensatory education and ordered Edison to provide A.S. 250 hours of tutoring in total and to convene a meeting within ten school days "to determine the detail of when and how the tutoring will be provided." Id.

Edison then failed to convene that meeting, and Ms. Suggs filed another complaint against Edison. Exhibit 4. On July 19, 2007, a hearing officer issued an HOD ordering Edison to fund the tutoring from independent providers. Exhibit 5 at 8. The July 19, 2007 HOD does not order any further meetings involving Edison. See id.

---

[5] Inexplicably, the hearing transcript filed in this case identifies the Hearing Officer in the April 20, 2006 hearing as Coles Ruff, when in fact it was Herbert St. Clair. The hearing officers for the January 7, 2005, April 20, 2005, June 23, 2005, April 28, 2006, April 12, 2007, and July 19, 2007 HODs were, respectively, Coles Ruff, Mr. Ruff, Charles Jones, Herbert St. Clair, Mr. Ruff, and Ramona Justice-Pegues. In the transcript filed in this case, the Hearing Officer (Mr. St. Clair) repeatedly mistakenly referred to Mr. Ruff as "Mr. Coles."

The April 12, 2007 HOD determined the amount of compensatory education due to A.S. from Edison pursuant to the January 7, 2005 HOD. The July 19, 2007 HOD eliminated the need for any meeting whatsoever involving Edison, as it authorized Ms. Suggs' to obtain independent tutors at Edison's expense. Edison did not challenge either of those HODs, and the deadline for doing so has passed, so the irreversible state of affairs is: 1) Edison must fund 250 of tutoring provided by independent tutors chosen by Ms. Suggs; and 2) there is no more need for a meeting or obligation to convene one. Therefore, the Court cannot grant Edison any effectual relief by relieving it of the April 28, 2006 HOD's requirement that it convene a meeting.

Because the Court cannot grant Edison effectual relief from the April 28, 2006 order to convene a compensatory education meeting, this case is moot.

## II.    THIS COURT SHOULD NOW GRANT SUMMARY JUDGMENT ON THE BASIS OF EDISON'S ADMINISTRATIVE DEFAULT

Because Edison never served a response and never convened a resolution meeting regarding the administrative complaint, the hearing officer should have granted Ms. Suggs' motion for default and ruled against Edison as a preliminary matter.

Within ten days of the filing of the due process complaint, Edison was required to serve on Ms. Suggs a response containing all of the following information:

> (aa) an explanation of why the agency proposed or refused to take the action raised in the complaint;
> (bb) a description of other options that the IEP Team considered and the reasons why those options were rejected;
> (cc) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
> (dd) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(2)(B)(i)(I). Additionally, Edison was required to convene a resolution session within fifteen days of the filing of the due process complaint. 20 U.S.C. § 1415(f)(1)(B).

In the nearly three months between the filing of the due process complaint and the administrative hearing,[6] Edison never served a response to the complaint or attempted to schedule a resolution session.[7] See Hr'g Tr. at 7-9. Accordingly, Ms. Suggs filed a motion for default based on arguments substantially identical to those made in this Motion, and reiterated the motion at the hearing. R. at 116-124; Hr'g Tr. at 7, 10-11, 17.

The Hearing Officer declined to rule on the motion at the hearing, but denied it in the HOD, because "the hearing officer could not find persuasive authority under *IDEIA 2004* for entering a DEFAULT against [Edison], its own LEA,[8] and declined to do so." R. at 5.[9] The Hearing Officer should have granted a default judgment, and the Court should do so now.

In Massey v. District of Columbia, the court stated that Congress intended there to be a remedy for DCPS' failure to serve a response. See 400 F. Supp. 2d 66, 73 (D.D.C. 2005)("Surely, Congress did not intend for parents to be left with no remedy when the school district fails to observe the procedural safeguards in the IDEA."). Unfortunately, the IDEA is silent on the question of the proper remedy for the failure of a local educational agency ("LEA") to serve a response under 20 U.S.C. § 1415(2)(B)(i)(I). In denying the motion for default, the Hearing Officer appears to have relied entirely on that silence.

However, the federal courts have held that, where the IDEA is silent regarding a procedural rule, the most closely analogous state rule must be applied, to the degree that

---

[6] On Edison's motion, the hearing was continued from its originally scheduled time. R. at 110.

[7] See supra footnote 4.

[8] Edison is in itself a local educational agency ("LEA") for purposes of the IDEA; some charter schools choose to operate under DCPS as the LEA. It appears that the Hearing Officer was simply making note of that fact, and not suggesting that it had some relevance to his decision.

[9] The record as filed by Edison contains a pre-hearing ruling on the motion from another hearing officer, Mr. Smith. R. at 114-115. Neither the Hearing Officer nor either attorney made any mention of that order at the hearing. That order, while denying the default, itself ordered Edison to file a response within seven days, well before the hearing date. R. at 115. The Hearing Officer's decision in the HOD, apparently made independently of Mr. Smith's order, supersedes it.

the rule is consistent with the policies underlying the IDEA. In an administrative

proceeding under the IDEA, the most closely analogous state rules are the District of

Columbia Superior Court Rules of Civil Procedure 12(a)(5) and 55(a), which provide the

remedy for a civil defendant's failure timely to file an answer to a complaint.

Because those rules require that a court enter a default when a defendant fails

timely to file an answer, the Hearing Officer should have granted the Petitioner a default

for Edison's failure to serve a response.

A.    **In the Absence of a Clear Procedure in the IDEA, the Most Closely Analogous State Rules Should Be Applied.**

The federal courts have ruled that where the IDEA is silent, the most closely analogous

state rule should be applied, provided that the state rule is consistent with the policies of the

IDEA. See, e.g., Spiegler v. Dist. of Columbia, 866 F.2d 461 (D.C. Cir. 1989).

In Spiegler, the Court of Appeals held that the District of Columbia's 30-day statute of

limitations for review of agency orders applied to federal cases challenging hearing officers'

decisions under the Education of the Handicapped Act ("EHA"), the predecessor to the IDEA.

866 F.2d at 462-470. Congress had not provided a statute of limitations in the text of the EHA,

so the Court of Appeals applied the local limitations period because it was closely analogous and

consistent with the policies underlying the EHA. Id.

The Court in Spiegler applied a two-part analysis: 1) identify the most closely analogous

state rule; and 2) determine whether the application of that rule was consistent with the federal

policies underlying the EHA. In performing the first part of the analysis, the Court held that a

substantive federal claim challenging the findings and decision of an EHA hearing officer was

"sufficiently analogous to an appeal from an administrative decision to permit us to borrow the

30-day local limitations period for such appeals." 866 F.2d at 466. In the second part of the

analysis, the Court concluded "that a 30-day limitations period, when combined with a duty by the District to inform hearing participants of the short [limitations] period, was not so harsh as to be inconsistent with [the EHA's underlying] policies." Id.

Though the Spiegler plaintiffs had argued for the application of the District of Columbia's default 3-year statute of limitations, the Court of Appeals found the 30-day limitations period consistent with federal policies: "Because the Act emphasizes the prompt resolution of disputes, we find at the outset that a shorter rather than longer statute of limitations would be more consistent with the policies underlying the Act." Id. at 467.

In keeping with Spiegler, in forming a remedy for Edison's failure to serve a response to the complaint, the Court should determine the state rules most closely analogous to this situation, and should apply them if they are not inconsistent with the federal policies underlying the IDEA.

**B.      The State Rules Most Closely Analogous to This Situation Are District of Columbia Superior Court Rules of Civil Procedure 12(A)(5) and 55(A).**

Generally, the two best sources for analogous rules in IDEA hearings are the District of Columbia Office of Administrative Hearings Procedural Rules ("OAH rules"), D.C. Mun. Regs. tit. 1 §§ 2800 et seq., and the District of Columbia Superior Court Rules of Civil Procedure ("Civil Rules").

In Spiegler, the Court of Appeals used the OAH Rules to determine the appropriate statute of limitations period for challenging the findings and decisions of an impartial due process hearing officer. However, because the OAH Rules do not require any response in a state administrative proceeding, they are not applicable to an action initiated under the IDEA, which now requires a response containing very specific information within 10 days of the filing of the complaint. Compare D.C. Mun. Regs. tit. 1 §§ 2813.5 ("[u]nless otherwise ordered, no

11

responsive pleading is required in cases commenced by a request for a hearing.") with 20 U.S.C.

§ 1415(2)(B)(i)(I) (requiring responses to IDEA complaints and listing necessary elements in a

response).

The Civil Rules, on the other hand, deal extensively with every aspect of pleading

practice, including the procedures for serving initial and responsive pleadings and the

consequences of violations of those procedures. See D.C. Super. Ct. Civ. R. 3, 7, 8, 12 & 55. The

Civil Rules dictate the necessary contents of answers, the timelines for filing answers, and the

penalties for failure to file. See D.C. Super. Ct. Civ. R. 12 & 55.

Because the OAH rules do not require responsive pleadings and the Civil Rules do, the

Civil Rules contain the rules most closely analogous to the IDEA response requirement. The

court should therefore apply the Civil Rules by analogy as long as they are consistent with the

federal policies underlying the IDEA.

**C.      By Analogy, the Civil Rules Required the Hearing Officer to Grant a
          Default.**

District of Columbia Superior Court Rule of Civil Procedure 12(a)(5) and 55(a) are the

state rules most closely analogous to Edison's failure to serve a response, as argued supra. The

rules require that "[w]hen a party against whom a judgment for affirmative relief is sought has

failed to plead or otherwise defend . . . the Clerk or the Court shall enter the party's default."

D.C. Super. Ct. Civ. R. 55(a); see also D.C. Super. Ct. Civ. R.12(a)(5) ("Except where the time

to respond to the complaint has been extended as provided in Rule 55(a), failure to comply with

the requirements of this Rule shall result in the entry of a default by the Clerk or the Court sua

sponte unless otherwise ordered by the Court.")

The courts do not have any discretion in the entry of a default for failure to respond to a

complaint; "the Clerk or the Court shall enter the party's default." D.C. Super. Ct. Civ. R. 55(a).

The comment to Rule 12 makes clear the intent that default be automatic in those circumstances. See D.C. Super. Ct. Civ. R. 12, cmt ("[P]aragraph (5) has been added to preserve the existing Superior Court rule of automatic entry of default against a defendant who does not timely respond to the complaint.").

The District of Columbia Court of Appeals has addressed this issue, and has enforced the clear text of the Rules in favor of automatic and non-discretionary default. See Digital Broadcast Corp. v. Rosenman & Colin, LLP, 847 A.2d 384, 388-89 (D.C. App. 2004) (holding that Rule 55(a) default is automatic and non-discretionary); Restaurant Equip. and Supply Depot, Inc. v. Gutierrez, 852 A.2d 951, 954-56 (D.C. App. 2004) (holding that default for failure to file answer was automatic even where defendant had filed motion to dismiss).

An entry of default is not a final judgment terminating a proceeding. "[T]he entry of default does not constitute a judgment, but simply precludes the defaulting party from offering any further defense on the issue of liability." Lockhart v. Cade, 728 A.2d 65, 68 (D.C. 1999). "[T]he defaulted party retains the right to contest and mitigate unliquidated damages." Digital, 847 A.2d at 389 n.7. In other words, the default resolves all liability questions against the defaulting party, but does not determine ultimate relief.

Because the serving of a "response" under the IDEA is a perfect analogue to the filing of an answer under the Civil Rules, and Edison in this case failed to serve a response, by analogy to the Civil Rules the Hearing Officer should have issued the equivalent to a default against Edison. The equivalent to a default in IDEA administrative hearings is a finding, as a matter of law, that the defaulted party committed all of the violations identified in the due process complaint and that the party has no defense. From that finding, the hearing could then proceed, if necessary, on the question of remedy.

**D.     An Order of Default After Edison Failed to Serve a Response and to Convene a Resolution Session Is Wholly Consistent with the Policies Underlying the IDEA.**

The application of the Civil Rules to this situation and the consequential order of default against Edison comports with the policies underlying the IDEA.

The primary purposes of the IDEA are "to ensure that all children with disabilities have available to them a free appropriate public education" and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1).

Additionally, it is clear from the statute and the caselaw that certain policies underlie the procedural aspects of the IDEA. In Spiegler, the Court of Appeals noted that Congress' intent in passing the EHA was "to ensure the prompt resolution of disputes regarding the appropriate education for handicapped children." 866 F.2d 461, 467. The amendments to the IDEA effective in 2005, most notably the clauses regarding the complaint, the response and the resolution session, indicate a Congressional intent to improve administrative efficiency by narrowing issues and limiting unnecessary hearings. See 20 U.S.C. § 1415(b)(6), (c)(2)(B)(i)(I) & (f)(1)(B). Finally, Congress' respect for the adversarial process and intent to establish basic procedures to ensure fairness in hearings can be found in the IDEA's right to counsel, right to disclosure of evidence, right to subpoena, right to cross-examination, right to attorneys' fees, the new clauses enabling the dismissal of inadequately drafted complaints, and the new provisions regarding the training and competence of hearing officers. See 20 U.S.C. § 1415(c)(2)(A), (f)(3)(A) & (h).

These four purposes – protection of the rights of children with disabilities, prompt resolution of special education disputes, administrative efficiency and procedural fairness – are all furthered by an order of default against Edison for failing to serve a response.

Obviously, a ruling in favor of a parent or child, particularly a ruling that prevents the

LEA from violating the IDEA and sandbagging a petitioner at hearing, helps to protect the rights

of children with disabilities. It is equally obvious that a default for failure to respond to a

complaint furthers prompt resolution and administrative efficiency, both in the short term, in that

the parties and the hearing officer are not forced to litigate issues regarding which the LEA has

offered no defense, and in the long term, in that the LEA will be more likely to serve a proper

response in future cases.

The impact of a default on procedural equity deserves a bit more consideration, because

the recent amendments to the IDEA have changed the balance of procedural obligations. Under

the old version of the law, a petitioner needed only to file a minimal hearing request, and the

LEA did not need to serve a response. Under the current version of the law, by the time the LEA

has failed to serve a response and thereby made itself subject to default, a petitioner has had to

file a substantially more comprehensive complaint, which has had to withstand a judgment of its

sufficiency. See 20 U.S.C. § 1415(b)(7) & (c)(2)(D). If the complaint is found sufficient, the

petitioner is granted a hearing, but cannot raise any issue not identified in the complaint. See 20

U.S.C. § 1415(f)(3)(B). While petitioners now bear that new burden, the LEAs bear a new

burden of their own – the response to the complaint.

A default against an LEA for failure to serve a response would enforce the policy of

procedural fairness evident in the IDEA's new requirements of a reciprocal information

exchange prior to the resolution session and the hearing. To decline to issue a default would

confound Congress' clear intent to require LEAs to provide the same level of information that

petitioners must provide, and would create a fundamentally unfair system in which a petitioner is

denied his/her opportunity to make a case if he/she fails to provide information according to
IDEA procedure, but an LEA is allowed to make its case in the opposite situation.

Finally, a default for a failure to serve a response is often vital to the preservation of
procedural equity, now that the burden of proof in IDEA hearings is on the complaining party.
Prior to the Supreme Court's decision in Schaffer v. Weast, the burden of proof in IDEA
hearings in the District of Columbia rested on the LEA, regardless of who brought the complaint.
546 U.S. 49 (2005). Shortly after the Court in Schaffer established the default rule that the
complaining party bears the burden of proof in IDEA hearings, the District of Columbia
modified its regulations to place the burden on the petitioner. See D.C. Mun. Regs. tit. 5  3030.3;
546 U.S. 49.

As a result, the petitioner – almost always a parent – is largely dependent upon the
response in the preparation of his or her case. In fact, the Court in Schaffer specifically relied on
the response requirement in the IDEA in making its decision, when it rejected "[t]he ordinary
rule, based on consideration of fairness, [that] does not place the burden upon a litigant of
establishing facts peculiarly within the knowledge of his adversary," because the IDEA provides
parents with several avenues to information, including the response. 546 U.S. 49, 126 S. Ct. 528,
536-37 (internal quotations and citations omitted).

Because a default against Edison in this case is wholly consistent with the policies
underlying the IDEA, and the denial of a default would frustrate Congress' intent, the Hearing
Officer should have applied the most closely analogous state rule to this situation and granted
Ms. Suggs a default by applying Civil Rules 12(a)(5) and 55(a) by analogy. The Hearing Officer
having failed to do so, this Court should now grant Ms. Suggs summary judgment on the basis of
Edison's default at the administrative level.

**III.    EDISON HAS NEVER MET, OR ATTEMPTED TO MEET, ITS BURDEN OF PROOF ON THE MERITS**

As the LEA, Edison bore the burden of proof in the administrative hearing. <u>See</u> 5 DCMR 3030.3 (2002), <u>amended by</u> 53 DCR 5249 (June 30, 2006).

Neither at the hearing, in its federal Complaint, nor in its summary judgment motion has Edison made any attempt to meet that burden. That is, Edison has never argued that it complied with the January 7, 2005 HOD or otherwise developed an appropriate compensatory education plan for A.S. in accordance with the findings of that HOD. Instead, Edison has consistently relied entirely on its arguments of issue preclusion and claim preclusion, which Ms. Suggs addresses in her Opposition to Edison's Motion for Summary Judgment.

Accordingly, upon rejecting those arguments, the Court should uphold the Hearing Officer's decision on the merits that Edison "remained fully liable for the compensatory education awarded to the student…in the January 7, 2005 HOD." R. at 6.

**CONCLUSION**

For the reasons stated above, the court should grant Ms. Suggs summary judgment on all claims.

Respectfully submitted,

/s/Douglas Tyrka
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264
tyrka@tyrkalaw.com