UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

FRIENDSHIP EDISON PUBLIC
CHARTERED SCHOOL,
                    Plaintiff,
          v.

NINA SUGGS, *et al.*,
                    Defendants.

---

Civil Action No. 06-1284
(PLF)(AK)

---

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to Rule 72.3(a) of the Local Rules

of the United States District Court for the District of Columbia for a Report and

Recommendation on the disposition of the following dispositive motions: 1) Plaintiff's Motion

for Summary Judgment ("Plaintiff's Motion") [12]; 2) Defendant Ms. Suggs' Motion for

Summary Judgment ("Suggs' Motion") [15]; and 3) Motion of the District of Columbia for

Judgment on the Pleadings or for Summary Judgment ("D.C.'s Motion") [18]. *See* May 7, 2007

Order [8].  Upon consideration of the dispositive motions and the respective responses thereto,

for the reasons set forth below, the undersigned recommends that Plaintiff's Motion [12] be

denied; Defendant Suggs' Motion [15] be granted in part and denied in part, and D.C.'s Motion

[18] be granted.

## I.  FACTUAL BACKGROUND[1]

Nina Suggs ("Suggs") is the parent of a child, A.S., who has been determined to be

eligible for specialized instruction and related services.  (Administrative Record (hereinafter

---

[1]The "Factual Background" borrows liberally from Plaintiff's Motion and Suggs' Motion,
with appropriate citations to the Administrative Record, which is docketed at [13].

"AR") at 63; Suggs' Motion, Exh. 2 [8/08/06 Interim Hearing Officer Determination ("HOD")]

at 2.)  A.S. attended Friendship Edison Public Charter School ("Edison") during school year

2003-2004.  (Suggs' Motion, Exh. 2 at 2.)   Suggs filed a due process complaint, on January 15,

2004, against Edison and the District of Columbia Public Schools ("DCPS").  (AR at 4.)  The

first due process hearing convened on July 12,  July 27, and November 8, 2004. (AR at 4, 37.)

On November 18, 2004, the Administrative Hearing Officer issued an interim HOD, placing A.S.

at High Road School, a full-time, private special education day school.  (AR at 4, 38.)

       On January 7, 2005, the Hearing Officer issued his HOD ("HOD 1") ordering, *inter alia*,

that "Edison shall provide the student compensatory education for missed speech language

services from September 2003 to February 2004, for the additional specialized instruction the

student should have received from January 2004 through June 2004 . . ., and for the counseling

services he did not receive in September 2003."  (AR at 46.)  The Hearing Officer further ordered

that DCPS was to "convene, and Edison shall participate in, a MDT [multidisciplinary] team

meeting[,]" and DCPS was also instructed to "continue to place and fund the student at Rock

Creek Academy. . . ." (*Id.*)  Edison alleges that it did not receive a copy of this January 7, 2005

HOD until six months after it was issued.  (Plaintiff's Motion at 2; AR at 4.)[2]  Edison asserts that

it first learned of the HOD's existence "in July 2005, when Edison received a letter of invitation

to a meeting at High Road School to discuss compensatory services."  (Plaintiff's Motion at 3;

AR at 17, 20, 30.)

       On March 9, 2005, Suggs filed a due process complaint against DCPS for failure to

_____

       [2]The pagination herein corresponds to the pagination on the electronically-filed version of
the document.

comply with the January 7, 2005 HOD and convene the MDT meeting. (AR at 4-5.)[3]   The

Hearing Officer issued an HOD against DCPS ("HOD 2"), on April 19, 2005, whereby DCPS

was ordered to convene the MDT meeting with an invitation to Edison, as ordered in the January

7, 2005 HOD. (AR at 4, 102.)  DCPS did not convene the MDT meeting and consequently, on

May 13, 2005, Suggs filed another due process complaint against DCPS for failure to comply

with the April 19, 2005 HOD.[4]  (AR at 4-5.)  On June 23, 2005, a hearing officer issued another

HOD ("HOD 3") ordering DCPS to convene the MDT meeting.  (AR at 4, 31-34.)

On July 21, 2005, DCPS convened the MDT meeting ordered in the January 7, 2005

HOD; Edison was invited to and attended that meeting.  (AR at 4, 23-30.)  That meeting could

not go forward, however, because no one there had a copy of the underlying January 7, 2005

HOD [1].  (AR at 4-6, 23-30.)  Edison received a copy of HOD 1 shortly thereafter (AR at 20)

and it attempted to coordinate with DCPS about a new date for the meeting (AR at 17.)  DCPS

reconvened the MDT meeting at the High Road School on November 8, 2005; Edison was not

invited and did not attend.  (AR at 59-75.)  The IEP team developed a compensatory education

plan for A.S. at that meeting.  (AR at 62, 75.)

On January 25, 2006, Suggs filed another due process hearing request, alleging that

Edison failed to comply with the January 7, 2005 HOD.  (AR at 4, 81-82.)  Edison moved to

dismiss the hearing, alleging *res judicata* and collateral estoppel based on the occurrence of "two

additional hearings [being] conducted since the January 7, 2005 HOD was issued regarding the

---

[3]Edison was not named as a party to the March 9, 2005 Complaint. (Transcript ("TR")
[13] at 5, 12.)

[4]Edison was not named as a party to that May 13, 2005 Complaint. (TR at 5, 12.)

same issue." (AR at 11-12.)[5]    Suggs requested the entry of a default and default judgment

against Edison at the administrative level and the hearing officer denied that request. (AR at 5-6,

116-125.)[6] The due process hearing convened on April 20, 2006 (AR at 4, 7-8, 86, 141; TR. at 1-

40.) The hearing officer issued his HOD ("HOD 4") on April 28, 2006, denying Edison's motion

to dismiss, and ordering Edison to convene an MDT meeting within thirty days. (AR at 1-6.)

The hearing officer also held that DCPS was responsible for not forwarding the prior HODs to

Edison (AR at 5-6.)

On May 31, 2006, Suggs filed a due process complaint against Edison alleging its failure

to comply with the April 28, 2006 HOD. (Suggs' Motion, Exh. 1 [05/31/06 Due Process

Complaint])[7] A due process hearing was convened on July 28, 2006, to address the May 31, 2006

Due Process Complaint. On August 8, 2006, a hearing officer issued an interim HOD, ordering a

hearing to fully litigate the need for compensatory education. (Suggs' Motion, Exh. 2.) The

evidentiary hearing on compensatory education was reconvened on October 11, 2006 and

concluded on March 9, 2007. (Suggs' Motion, Exh. 3 [4/12/07 HOD].) On April 12, 2007, the

---

[5]These allegations correspond to Counts I and II of Edison's Complaint.

[6]Suggs' [Cross] Motion for Summary Judgment asserts that hearing officer
determinations post-dating the April 28, 2006 HOD(4) make it moot, with the effect that the later
HODs (5 and 6) remain unchallenged and Edison is responsible for compensatory education.
Suggs alternatively argues that the Hearing Officer should have granted her motion for default,
and requests that the trial court overturn that portion of the underlying Hearing Officer
determination. The Court recommends that the trial court decline to overturn the Hearing
Officer's denial of default and notes that even if such default was entered, the relief accorded to
Suggs would not exceed the relief accorded by means of HODs 5 and 6.

[7]Edison claims that it never received a copy of the April 28, 2006 HOD and only learned
of that HOD when Suggs filed her fifth due process hearing complaint on May 31, 2006.
(Edison's Motion at 2-4.)

hearing officer issued an HOD ("HOD 5") resolving the May 31, 2006 Due Process Complaint, and ordering Edison to provide A.S. with 250 hours of tutoring in total and to convene a meeting within ten school days to "determine the detail of when and how the tutoring will be provided." (Suggs' Motion, Exh. 3 at 7.)[8]

On May 4, 2007, Suggs filed a due process complaint against Edison alleging that it had failed to comply with the April 12, 2007 HOD, directing it to convene a meeting. (Suggs' Motion, Exh. 4 [5/04/07 Due Process Complaint].)  In an HOD dated July 19, 2007 ("HOD 6"), a hearing officer ordered Edison to fund the provision of tutoring ordered in the April 12, 2007 HOD using independent providers. (Suggs' Motion, Exhibit 5 [07/19/07 HOD] at 9.)   The July 19, 2007 HOD does not order any further meetings involving Edison.  (*Id.*)

On July 20, 2006, Edison filed its Complaint in this case, challenging the April 28, 2006 HOD.  According to Suggs, Edison "has never brought an action challenging either of the April 12, 2007 and July 19, 2007 HODs [and] Edison has never filed for a stay of either of those HODs."  (Suggs' Motion at 5.)

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a court should grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions . . ., together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  In ruling

---

[8]Both Edison and Suggs participated in the hearing to determine the amount and form of compensatory education.  Witnesses testified on behalf of Suggs and the Hearing Officer evaluated competing assertions and witness testimony before making his conclusions of law.

on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Anderson*, 477 U.S. at 248.

The nonmoving party must demonstrate specific facts in the record which create a genuine issue as to a material fact to oppose the motion for summary judgment. To be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation. *See Anderson*, 477 U.S. at 248; *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment. The nonmoving party must establish more than "the mere existence of a scintilla of evidence" to support its position. *Anderson* at 252. The moving party may defeat summary judgment through factual representations made in a sworn affidavit if he can provide "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006) or "support his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). The court may grant summary judgment if there is no significantly probative evidence tending to support the complaint. *Shields v. Eli Lilly*, 895 F.2d 1463 (D.C. Cir. 1990).

Fed. R. Civ. P. 12 (c) provides that a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Under Rule 12 (c), the court must

accept the nonmovant's allegations as true and should view the facts in the light most favorable to the nonmoving party. *See Judicial Watch, Inc. v. Clinton*, 880 F. Supp.1, 7 (D.D.C. 1995). The court should grant a motion for judgment on the pleadings if the movant "is entitled to judgment as a matter of law." *See Burns Int'l Servs. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995).

The IDEA guarantees children with disabilities the right to a free appropriate public education ("FAPE"). 20 U.S.C. §§1400(d)(1)(A), 1412(a)(1). The primary vehicle for ensuring that students identified as disabled receive FAPE is the creation and implementation of an individualized education program ("IEP") setting forth the services to be provided to meet that student's needs. *Burlington v. Massachusetts*, 471 U.S. 359, 368 (1985) (describing the IEP as the *modus operandi* of the IDEA); 20 U.S.C. §1414(d)(1)(A); (d)(2)(A).

The student's parents, teachers, school officials and other professionals may be involved in the development of the IEP and recommendation of placement. 20 U.S.C. §1414(d)(1)(B). Once a child has been identified as disabled, the school district must annually review and revise the student's IEP. 20 U.S.C.§§1414(d)(4)(A)(I) and (ii). If appropriate educational services cannot be provided by the school district, the IDEA requires that the student be placed in a private school at public expense. 20 U.S.C. §1413(a)(4). Parents who disagree with their child's evaluation may request an administrative hearing, before an impartial Hearing Officer, to challenge the IEP or the placement. 20 U.S.C. §1415(b)(2).

"The court has broad discretion to grant appropriate relief under the IDEA . . . and its standard of review under IDEA is less deferential than that used in the traditional substantial evidence test in ordinary administrative review cases." *Argueta v. Government of D.C.*, 355 F.

Supp.2d 408, 412 (D.D.C. 2005) (citing *Sch. Comm. of Burlington v. Mass. Dept. of Educ.*, 471

U.S. 359, 369 (1985)) (additional citations omitted). The IDEA provides for judicial review in

state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due

process hearing. 20 U.S.C. §1415(i)(2)(A). The Court employs a "preponderance of the

evidence" standard in performing such judicial review. 20 U.S.C. §1415(i)(2)(B)(iii); *see also*

*Lenn v. Portland School Committee*, 998 F.2d 1083, 1086 (1st Cir. 1993).

Pursuant to the IDEA, "the court [ ] shall receive the records of the administrative

proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision

on the preponderance of the evidence, shall grant such relief as the court determines is

appropriate." 20 U.S.C. §1415(i)(2)(B). When neither party requests that the court hear

additional evidence, their "motion[s] for summary judgment [are] simply the procedural vehicle

for asking the judge to decide the case on the basis of the administrative record." *Heather S. v.*

*Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997)(citation omitted).

The party challenging the Hearing Officer's determination bears the burden of persuading

the court that the Hearing Officer's decision was incorrect. *Angevine v. Smith*, 959 F.2d 292, 295

(D.C. Cir. 1992); *Kerkam v.McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). The court should not

"reverse the hearing officer's findings simply because [the court] disagree[s] with them." *Board*

*of Education of Arlington Heights School District No. 25 v. Illinois State Board of Education*,

No.98C 5370, 2001 WL 585149, *4 (N.D.Ill. March 19, 2001). The Court may make an

independent determination but "it must also give 'due weight' to the administrative proceeding

and afford some deference to the expertise of the hearing officer and school officials responsible

for the child's education." *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993) (citation

omitted.)

## LEGAL ANALYSIS

According to Plaintiff, the issues in this case can be summarized as follows: "whether the hearing officer erred when he determined that the parent's complaint was not barred by *res judicata* or collateral estoppel, and ordered Edison to fund compensatory education." (Pl.'s Motion at 4.) Counts I and II of Plaintiff's Complaint allege that the Hearing Officer erred in finding that the January 25, 2006 hearing request was not barred by *res judicata* and collateral estoppel. Count III alleges that "[a]ny consequences suffered by the parent in the failure to implement the three previous hearing officer's determinations is a direct result of DCPS's complacency in enforcing the HOD's." (Complaint at ¶25.) Count IV of the Complaint alleges that "[t]he Hearing Officer erred in ordering a meeting to discuss compensatory education without any showing as to educational detriment as required by *Reid v. District of Columbia*, 401 F.3d 516 (D.C. Cir. 2005)." (Complaint at ¶27.)

### A. Res Judicata

Plaintiff's claims of *res judicata* and collateral estoppel were addressed and dismissed by the Hearing Officer in his April 28, 2006 Decision and Order (A.R. 1-6). The Hearing Officer considered whether "the parent's claim for delivery of compensatory education awarded in Paragraph 1 of the Order in the January 7, 2005 HOD [was] barred by *res judicata* and collateral estoppel because [Edison] was not a party-respondent in the March 9th and May 13th Complaints[.]" (A.R. at 5.)

Under the doctrine of *res* judicata, or claim preclusion, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have

-9-

been raised in that action." *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted.) Claim preclusion requires a showing of three elements: 1) the presence of the same parties or privies in the two suits; 2) claims arising from the same cause of action in both suits; and 3) a final judgment on the merits in the previous suit. *See Apotex , Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004).

The March 9 and May 13, 2005 Due Process Complaints were filed by Suggs and directed only to DCPS and did not name Edison as a party. Edison suggests that it was a privy to DCPS but makes no showing that this first element is satisfied. The record in this case involving multiple HODs contradicts Edison's claim that it has privity with DCPS as certain HODs resulting from Suggs' due process complaints requested relief only against DCPS and others were directed at Edison alone. The obligations imposed by the HODs against the two parties also differed. Accordingly, there is no indication that Edison and DCPS were in privity.

Edison alleges that there is a common nucleus of facts in the previous suit as those in the current suit. Edison states that "[t]he HODs issued on April 19, and June 23, 2005 both arose from DCPS's failure to comply with and implement the January 7, 2005 HOD and convene the MDT meeting" and "[t]he Complaint filed on January 25, 2006 also alleged the same violation of failure to implement the January 7, 2005 HOD and convene the MDT meeting." (Edison Motion at 6.) Suggs filed the March 9, 2005 Complaint based on DCPS's failure to comply with the January 7, 2005 HOD and convene the ordered MDT hearing. (A.R. at 4-5, TR. at 5, 12.) That resulted in an April 19, 2005 HOD against DCPS ordering DCPS to convene the MDT meeting with an invitation to Edison, consistent with the January 7, 2005 HOD. (A.R. at 4, 81, 102.) On May 13, 2005, Suggs filed another Complaint based on DCPS's failure to comply with the April

19, 2005 HOD and convene the MDT meeting as ordered in the January 7, 2005 HOD.  (A.R. at

4-5.)  This resulted in a June 23, 2005 HOD ordering DCPS to convene the MDT meeting. (A.R.

at 4, 31-34.)

There is no disagreement among the parties that several successive HODs addressed

DCPS's obligations to convene an MDT meeting.  Suggs argues however that the January 25,

2006 complaint against Edison does not "allege[ ] the same violation of failure to implement the

January 7, 2005 HOD and convene a meeting" but rather, the violation alleged in the January 25,

2006 complaint was "Edison's failure to develop a compensatory education plan, not DCPS'

failure to convene a meeting, as alleged in prior complaints."  (Suggs' Opposition at 3.)  The

Complaint alleged in relevant part that "[a]t a MDT meeting held on July 21, 2005, Friendship

[Edison] refused to discuss the provision of the outstanding compensatory education owed to

[A.S.] under the terms and conditions of the January 7, 2005 HOD" and "Friendship has never

determined the form, amount and duration of compensatory education owed to [A.S.] pursuant to

the terms and conditions of the January 7, 2005 HOD."  (A.R. at 81.)

The record in this case indicates that while Suggs brought complaints against DCPS that

ultimately forced DCPS to convene a meeting, she "did not bring a complaint against Edison for

its failure to participate in a non-existent meeting."  (Suggs' Opposition at 4.)  It was only later

after DCPS fulfilled its obligation to hold that meeting that Suggs brought a complaint against

Edison for its failure to develop a compensatory education plan.  (*Id.*)   Edison fails to reconcile

the existence of HOD 6 (July 19, 2007), which orders Edison to fund compensatory education

but which does not order any further meetings.  HOD 6 moots Edison's challenge to the January

25, 2006 due process hearing request, which resulted in HOD 4 (April 28, 2006), ordering Edison

to convene an MDT meeting within thirty days. Suggs subsequently filed a due process complaint against Edison on May 31, 2006, for Edison's failure to comply with the April 28, 2006 HOD and this eventually resulted in an evidentiary hearing on compensatory education. The April 12, 2007 HOD 5 ordered Edison to provide 250 hours of tutoring and to convene a meeting as to when and how the tutoring would be provided. The final HOD 6 does not order any meeting to be convened, so that part of the relief granted in HODs 4 and 5 is now moot. Furthermore, Edison never brought an action challenging either of the April 12, 2007 and July 19, 2007 HODs, and never filed a stay for either of those HODs. The undersigned recommends that Plaintiff's argument for summary judgment based on *res judicata* be denied because of lack of privity between the parties and the fact that Suggs' claim against Edison did not arise from the same cause of action as Suggs' claim against DCPS.

### B. Collateral Estoppel (Issue Preclusion)

Plaintiff argues that collateral estoppel (issue preclusion) bars the enforcement of the January 25, 2006 Hearing Request, requiring Edison to comply with the January 7, 2005 HOD. The elements of collateral estoppel are: 1) identity of issue in a prior case; 2) full litigation of issue in a prior case; and 3) necessity of resolution of the issue to the decision in the prior case. *United States v. Andrews*, 479 F.3d 894, 900 (D.C. Cir. 2007). Plaintiff's proposition of identity of issues has already been discussed and rejected by the undersigned on grounds that while Edison focuses on the convening of an MDT meeting, the real issue is Edison's failure to develop a compensatory education plan and that issue was not addressed in the subsequent HODs

involving claims against DCPS.[9]  Furthermore, Edison has not established why the determination

of any fact in the prior hearings against DCPS would invalidate Mr. Suggs' claim against Edison

since there are separate claims against Edison and DCPS.

Suggs additionally argues that "the 2005 HODs against DCPS were consent orders, or

'settlements on the record.'" (Suggs Opposition at 5, citing A.R. at 137.)  According to Suggs,

"[n]o issue was fully litigated at either hearing, and no finding was necessary to either decision."

(Suggs Opposition at 5.)  The undersigned notes that Edison's collateral estoppel claim fails on

grounds that there is no identity of issues with a prior case nor were the issues fully litigated in a

prior case.

### C. DCPS Responsibility for any Harm

Count III of Edison's Complaint is vague insofar as it asserts that "[a]ny consequences

suffered by the parent in the failure to implement the three previous hearing officer's

determination[s] is a direct result of DCPS's complacency in enforcing the HODs."  (Complaint

at ¶25.)  While the Hearing Officer had already acknowledged that DCPS was at fault for not

providing notice of any impending MDT meeting, there is no support in the record that DCPS

should assume liability for Edison's failure to provide compensatory education, which is a

responsibility that falls on Edison alone.  DCPS asserts that "the issue before the court is not the

allocation of any 'harm' that befell the student, but whether Edison will be required to meet its

responsibilities under the HOD provisions at issue."  (DCPS Motion at 8.)  Edison fails to allege

any enforceable claim for relief against DCPS and the undersigned accordingly recommends that

---

[9]In its Complaint, at ¶23, Edison asserts that "[t]he issue in this case, the convening of an
MDT meeting, has not only been litigated once, but twice.  In both instances the parents chose to
have DCPS convene an MDT meeting."

judgment on the pleadings be entered in DCPS's favor on Count III, the only Count addressing DCPS.

### D. Showing of Educational Detriment

Count IV alleges that "the  Hearing Officer erred in ordering a meeting to discuss compensatory education without any showing as to educational detriment as required by *Reid v. District of Columbia*, 401 F.3d 516 (D.C. Cir. 2005)." (Complaint at ¶27.)  Suggs argues that "Edison had already waived any objection to an order requiring a meeting to determine compensatory education by failing to serve a response to the due process complaint, failing to file a notice of insufficiency regarding the due process complaint, and failing to convene a resolution session regarding the due process complaint." (Suggs Opposition at 9, string citing provisions from 20 U.S.C. §1415.)  Edison does not dispute that it did not serve a response to the due process complaint, or file a notice of insufficiency regarding the due process complaint, or convene a resolution session.

Suggs further argues that "Edison's criticism of the HOD clause ordering Edison to convene a meeting to determine compensatory education has become moot" in light of the two superseding HODs issued since HOD 4, and the Court cannot provide Edison with relief because "there is no more call for a compensatory education meeting." (Suggs' Opposition at 10.)  Subsequent to HOD 4, Suggs filed a new due process complaint against Edison on May 31, 2006, and on August 8, 2006, a hearing officer issued an interim HOD ordering a hearing to fully litigate the need for compensatory education, 'in the best interest of the student in light of *Reid*." (Suggs' Opposition Exh. 4 [08/08/06 Interim HOD], at 7, citing *Reid*.)

The hearing process was completed on March 9, 2007, after which a final HOD was

-14-

issued on April 12, 2007 (Suggs' Opposition Exh. 5 [04/12/07 HOD].)  In connection with the

April 12, 2007 HOD, the Hearing Officer reviewed all the evidence presented regarding

compensatory education and ordered Edison to provide A.S. with 250 hours of tutoring, and to

convene a meeting regarding the details of when and how the tutoring would be provided.

Edison did not convene a meeting and Suggs subsequently filed a complaint against

Edison on May 4, 2007.  (Suggs' Motion, Exh. 6 [05/04/07 Due Process Complaint].)  On July

19, 2007, a Hearing Officer issued an HOD ordering Edison to fund the tutoring from

independent providers.  (Suggs' Opposition Exh. 7 [7/19/07 HOD] at 8.)  That HOD does not

order any further meetings involving Edison.  Neither the April 12, 2007 HOD nor the July 19,

2007 HOD was challenged by Edison.

In the *Reid* case, the Court of Appeals reviewed a District Court decision regarding an

HOD in which a Hearing Officer found a denial of FAPE and determined a compensatory

education award for that denial.  The Hearing Officer applied a formula to the missed instruction

or services and allowed the IEP team to reduce or discontinue compensatory education. 401 F.3d

516, 520 (D.C. Cir. 2005).  On appeal, the Court of Appeals held that compensatory education

awards cannot be determined by formula and a hearing officer "cannot delegate authority to the

IEP team to reduce or discontinue the prescribed compensatory education." *Id.* at 522-27.

Nothing in *Reid* however prohibits a hearing officer from ordering a meeting to determine

compensatory education and in fact, cases interpreting *Reid* have allowed IEP teams to make

initial compensatory education determinations.  See *Blackman v. District of Columbia*, 374 F.

Supp.2d 168, 172 (D.D.C. 2005) (ordering DCPS to convene "an MDT/IEP meeting to determine

the appropriate scope and amount of compensatory education to which [the plaintiff's child] is

-15-

entitled"); *Flores v. District of Columbia*, 05-CV-653 (RBW), June 30, 2006 Order (ordering meeting "to assess whether and to what degree the child is in need of compensatory education.") (Suggs' Opposition at 13.)

Edison asserts that there is no evidence in this case that linked A.S's level of academic functioning to any denial of FAPE by Edison.  According to Edison, there is nothing in the record to suggest that the student is in need of additional services or that additional services are warranted for any previous denial of FAPE.  (Edison's Opposition at 6, citing A.R. at 38.) Edison's statement is contradicted by the Hearing Officer's April 12, 2007 HOD.  The Hearing Officer considered student's evaluations from 2003-2006, the student's circumstances, and witness testimony and recommendations before determining how much compensatory education was owed by Edison.  The Hearing Officer found that it was in the best interest of the student not to further delay provision of compensatory education services.  Edison had an opportunity to participate in the hearing resulting in the April 12, 2007 HOD, but the Hearing Officer noted that Edison came to the hearing with no evaluations, no witnesses and no documents.  Accordingly, the undersigned recommends that Edison's claim that there has been no showing of educational detriment be denied based on the record before the trial court, which shows that the Hearing Officer considered the educational detriment of the student.

## IV. RECOMMENDATION

The undersigned recommends that the trial court deny summary judgment in favor of Plaintiff on grounds that the Hearing Officer's denial of application of *res judicata* and collateral estoppel fail is appropriate because neither standard has been met; Edison's claims against DCPS in Count III of the Complaint are vague and lack merit, and its claim that the Hearing Officer

acted contrary to the standard in *Reid* is unsupported by the record in this case. The undersigned also recommends that DCPS's motion for judgment on the pleadings be granted and that Suggs' motion for summary judgment be granted in part, with the effect that Counts I -IV of the Complaint be dismissed with prejudice. The undersigned further recommends that Suggs' motion for summary judgment be denied in part, as moot, to the extent that it requests that the trial court overturn any portion of the Hearing Officer's April 28, 2006 determination [HOD 4].

## V. REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3 (b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. See Thomas v. Arn, 474 U.S. 140 (1985). If this Report and Recommendation is served on the parties by mail, calculation of the time period for filing written objections is as follows: 10 business days (excluding weekends and holidays) plus three calendar days (including weekends and holidays). See CNPq-Conselho Nacional De Desenvolvimento Cientifico E Technological

-17-

v. Inter-Trade, Inc., 50 F.3d 56, 58 (D.C. Cir. 1995) (*per curiam*).


Dated: April 22, 2008                    _____/s/_____
                                         ALAN KAY
                                         UNITED STATES MAGISTRATE JUDGE